THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES,<br><br>                Plaintiff,<br>        v.<br><br>U.S. DEPARTMENT OF COMMERCE, *et al.*,<br><br>                Defendants. | CASE NO. C16-1866-JCC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Defendants' motion to dismiss for the reasons explained herein.

## I.  BACKGROUND

Plaintiff Northwest Environmental Advocates ("NWEA") asserts that the U.S. Environmental Protection Agency ("EPA") and the National Oceanic and Atmospheric Administration ("NOAA"), in working with the State of Washington, failed to meet their obligations under the Clean Water Act ("CWA"), the Coastal Zone Management Act ("CZMA"), and the Endangered Species Act ("ESA") to protect Washington's coastal waters and the creatures that live in its waters from nonpoint source pollution. (Dkt. No. 18 at 1–2.) NWEA

requests this Court order the agencies to do so. (*Id*. at 32–33.)

CWA addresses sources of pollution in the waters of the United States through a model of shared responsibility. *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992). Within this scheme, CWA Section 319 addresses nonpoint sources (e.g. runoff). It requires states to develop and implement a Nonpoint Management Program ("CWA Nonpoint Program"). 33 U.S.C. § 1329. Under Section 319, EPA's role is limited to approving each state's Nonpoint Program, assessing whether a state is making satisfactory progress towards the Program's implementation schedule, and making grants ("CWA Assistance Grants") to partially fund the Program. *Id*.

The Coastal Zone Reauthorization Amendments of 1990 ("CZARA"), 16 U.S.C. § 1455b represent a portion of CZMA. CZARA provides a separate, but distinct Coastline Nonpoint Pollution Management Program ("Coastal Nonpoint Program") to CWA's Nonpoint Program. Its focus is on coastal areas. Any state with a Coastal Zone Management Program must include a Coastal Nonpoint Program. 16 U.S.C. § 1455b(a)(1). A state's Coastal Nonpoint Program must be approved both by EPA and NOAA, the latter of which does so on behalf of the U.S. Department of Commerce. (Dkt. No. 18 at 6.) Like CWA Section 319's Nonpoint Program, once a state submits an approvable Coastal Nonpoint Program, the state is eligible to receive federal grants under CZMA ("Coastal Assistance Grants") to assist it in its implementation. 16 U.S.C. § 1455b(h)(2)(B).

The Administrative Procedure Act ("APA") allows persons to sue a government agency if harmed by the agency's failure to comply with its statutory mandate. *Sackett v. E.P.A.*, 566 U.S. 120, 125 (2012). The APA only applies to the extent a remedy would not otherwise exist for the impacted person. 5 U.S.C. § 704. Suit can be brought under the APA against agencies who "unlawfully with[o]ld or unreasonably delay[]" actions required by law, or take actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1), (2)(A). Neither CWA Section 319 nor CZARA provide a cause of action for violations of the Acts. Therefore, such claims must be brought under the APA.

The ESA, on the other hand, contains its own cause of action. 16 U.S.C. § 1540(g). This provision provides a direct cause of action for any violation of the Act. *Id*. The ESA was established to protect and conserve species threatened with extinction. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 651, (2007). Section 7 requires federal agencies taking discretionary action that may jeopardize the existence of listed species or adversely affect critical habitat of such species to consult with the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") before taking action. 16 U.S.C. § 1536(a)(2); *Nat. Res. Def. Council v. Houston*, 146 F.3d 1118, 1125 (9th Cir. 1998). Generally, action may only be taken if FWS and NMFS determine that it will not jeopardize the existence of such species or its critical habitat. 16 U.S.C. § 1536(b)(4).

NWEA asserts its members have been harmed by EPA and NOAA's inaction and the agencies' unlawful actions. First, the agencies failed to make a final CZARA approval decision on Washington's Coastal Nonpoint Program (Claim #1). (Dkt. No. 18 at 27–28.) Next, the agencies failed to withhold required amounts from Washington's CWA Assistance Grants and Coastal Assistance Grants (Claims #2–3). (*Id*. at 28–29.) In addition, the EPA acted arbitrarily and capriciously when it approved Washington's 2015 CWA Nonpoint Program update despite clear evidence that the Program did not meet relevant CWA Section 319 requirements (Claim #4). (*Id*. at 29–30.) EPA also acted arbitrarily and capriciously when it determined Washington made satisfactory progress towards its CWA Nonpoint Program implementation schedule and awarded resulting CWA Assistance Grants to Washington in 2015 and 2016 despite clear evidence that such progress had not been made (Claim #5). (*Id.* at 30–31.) Finally, the agencies failed to engage in required ESA consultation when taking such actions (Claim #6). (*Id*. at 31–32.)

NWEA seeks the following relief: (a) declarations that EPA and NOAA violated CZARA in failing to definitively rule on Washington's Coastal Nonpoint Program, violated CWA in approving Washington's CWA Nonpoint Program, and violated the ESA in failing to

engage in required consultation; (b) order EPA and NOAA to make a definitive ruling on Washington's Coastal Nonpoint Program and reconsider the adequacy of Washington's 2015 CWA Nonpoint Program update based on appropriate criteria; (c) order NOAA and EPA to withhold the required amounts from CWA Assistance Grants and Coastal Assistance Grants until such time as the agencies provide definitive approval for Washington's Coastal Nonpoint Program; (d) order EPA to withhold all CWA nonpoint funding until such time as EPA has determined, using appropriate criteria, that Washington has made satisfactory progress in implementing its CWA Nonpoint Program; and (e) order EPA and NOAA to engage in required consultation before taking further actions. (*Id.* at 27–33.)

Defendants move to dismiss all claims pursuant to Rule 12(b)(1). (Dkt. No. 21 at 3.) Should that challenge fail, Defendants move pursuant to Rule 12(b)(6) to dismiss all but two of NWEA's four ESA claims. (*Id.* at 31.)

## II.  DISCUSSION

### A.  This Court Has Subject Matter Jurisdiction

Federal courts must dismiss a complaint lacking subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction falls on the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). If a moving party factually attacks a district court's subject matter jurisdiction, the nonmoving party must put forward such "evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Otherwise, "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor" and then determining whether they are legally sufficient to invoke jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (party seeking relief need plead sufficient facts to allow the court to draw a reasonable inference that defendant is liable for alleged misconduct). Defendants

claim to be making a factual challenge to NWEA's standing, but present no evidence to support such a challenge. (Dkt. No. 21 at 14.); *see St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (facial challenge requires evidence demonstrating that subject matter jurisdiction is lacking). Therefore, the court will assess NWEA's standing on the basis of its legal sufficiency.

NWEA must sufficiently plead, through plausible facts, that (1) it has suffered a particularized and concrete injury, (2) that is fairly traceable to the challenged conduct, (3) which is likely to be redressed by a favorable decision of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In addition, NWEA, as an association, must demonstrate that (1) its members would otherwise have standing to bring suit individually, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim nor the relief requested requires the participation of individual members to the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

NWEA describes itself as a non-profit organization that works to "protect and restore water quality and fish habitat in the Northwest." (Dkt. No. 18 at 3.) It claims that its members "reside near, visit, use, and/or enjoy rivers, streams, and other surface waters in Washington State, including Washington's coastal areas." (*Id*. at 3.) NWEA further claims that its members have a "specific interest in the full and proper implementation of the laws passed to control water pollution and protect wildlife" and have "interests in complete implementation of environmental laws." (*Id*. at 5–6).

NWEA correspondingly alleges that its members have been injured as a result of Defendants' failure to take required actions and in arbitrarily and capriciously taking other actions required by CZARA, CWA, and ESA. Specifically, NWEA claims Defendants have failed to provide Washington the incentive mandated through CZARA and CWA to reduce Washington's sources of nonpoint pollution by withholding portions of Program Assistance Grants as required by law. (*Id*. at 4.) NWEA further alleges that Defendants failed to engage in required consultation under the ESA. (*Id*. at 5.) NWEA claims that, as a result of Defendant's

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS
C16-1866-JCC
PAGE - 5

failures, its members have suffered from reduced quality of the water they work in, recreate in, and enjoy, and harmful impacts to wildlife that NWEA's members work with, observe, study, and enjoy. (*Id.* at 4–5.)

Defendants attack subject matter jurisdiction on the basis of standing. (Dkt. No. 21 at 15.) Defendants do not focus their attack on whether NWEA has organizational standing, nor do they meaningfully argue that its members have not suffered a particularized injury from nonpoint sources of pollution in Washington waters. (Dkt. No. 35 at 2.) Defendants limit their attack to issues of causation and redressability. (*Id.* at 16.)

        1.       <u>Claims #1–5: Standing</u>

Defendants' primary argument is that neither CZARA nor CWA provides a regulatory mechanism to force states to manage nonpoint pollution and, therefore, Defendants are wholly reliant on Washington taking action to redress NWEA's harms. (Dkt. No. 21 at 17, 20, 22.) Defendants claim that on this basis, NWEA cannot establish causation or redressability because the Court cannot compel Washington to act. (*Id.*)

Defendants cite *Am. Canoe Ass'n, Inc. v. U.S. E.P.A.*, 30 F. Supp. 2d 908, 914–15 (E.D. Va. 1998), in support of this assertion. (Dkt. No. 21 at 23.) But *American Canoe* is not binding on this Court. Nor is it persuasive, given the decision in *Alaska Ctr. for Env't v. Browner*. *See* 20 F.3d 981, 984 (9th Cir. 1994) (partial reliance on a state's actions under CWA to address nonpoint source pollution will not destroy standing when Congress "already determined that involvement of the third party is an effective tool for achieving water quality standards in waters impacted by non-point source pollution."). *Id.* at 984. This case is analogous to *Alaska Center*.

Furthermore, NWEA alleges a *procedural* injury for Claims 1–5. (Dkt. No. 18 at 5.) A plaintiff incurs a procedural injury when an agency fails to follow required procedures. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). A plaintiff need first show "that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th

Cir. 2008). Once a plaintiffs does so, "'the causation and redressability requirements are relaxed.'" *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (quoting *Salmon Spawning & Recovery All.*, 545 F.3d at 1226 (9th Cir. 2008)).

Defendants first dispute whether NWEA has sufficiently plead that a procedural right exists under CWA Section 319 and CZARA. (Dkt. No. 35 at 4.) But they fail to adequately support this assertion. CWA Section 319 and CZARA clearly contain procedural requirements for EPA and NOAA to follow in reviewing and approving Nonpoint Programs and making available resulting grant funds. *See* 33 U.S.C. § 1329(d)(1) (EPA "shall either approve or disapprove" a state's CWA Section 319 Nonpoint Program), (h)(8) ("no [CWA Assistance] [G]rant may be made . . . unless the Administrator determines that such State made satisfactory progress"); 16 U.S.C. § 1455b(c)(1) (EPA and NOAA "shall jointly review the [state's Coastal Nonpoint] [P]rogram" which "shall be approved" if the agencies determine that the Program "meet[s] the requirement of this section"), (c)(3) (the agencies "shall withhold" Program funds if "an approvable [P]rogram as required by this section" has not been submitted by the state), (c)(4) (same). These provisions are sufficient to establish NWEA's procedural rights under CWA Section 319 and CZARA. *See Salmon Spawning*, 545 F.3d at 1225.

Defendants' remaining argument against procedural injury is similarly unpersuasive. They describe NWEA's Claims 1–5 as a "a speculative prediction that [Defendants'] actions will encourage [Washington] to act." (Dkt. No. 21 at 17.) But NWEA need only show that the procedural step the agency failed to take "*could* protect [its] economic interests." *Salmon Spawning*, 545 F.3d at 1226; *see also Ctr. for Biological Diversity v. Envtl. Prot. Agency*, 861 F.3d 174, 184 (D.C. Cir. 2017) (procedural deficiency need only be "connected to the substantive result."). NWEA has met this burden. NWEA plead that EPA and NOAA's failure to fulfill its obligations under CWA and CZARA "subvert[ed] and render[ed] ineffective the statutes Congress adopted to protect water quality, aquatic species, and drinking water supplies from nonpoint sources of water pollution." (Dkt. No. 18 at 2.) It further plead that its members

"regularly use these waters and adjacent lands and have definite future plans to continue to use and enjoy these waters for recreational, subsistence, scientific, aesthetic, spiritual, commercial, educational, employment, conservation . . . study, and photography, and recreational" purposes, and that its members would "derive more benefits from their use of Washington's coastal waters if Defendants properly implemented the laws Congress adopted to reduce nonpoint source water pollution." (*Id*. at 4.) The Court accepts these allegations as true at this point in the proceeding. *Leite*, 749 F.3d at 1121 (9th Cir. 2014).

The Court DENIES Defendants' motion to dismiss Claims #1–5 based on a lack of subject matter jurisdiction.

### 2. Claim #6: Standing

Defendants' standing argument for NWEA's final claim is largely the same as the preceding claims: NWEA failed to plead a sufficient connection between the ESA consultation requirement and NWEA's injuries so as to satisfy even its reduced burden to demonstrate causation and redressability. (Dkt. No. 21 at 25.) But again, NWEA need only plead that had Defendants complied with their consultation obligations, such consultation *could* protect NWEA's interests in listed species and their critical habitat. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1044 (9th Cir. 2015) (finding that plaintiff had standing to bring an ESA Section 7 claim against a federal agency even though state action played a significant role in the ultimate outcome). NWEA directly ties Defendants' procedural deficiency to its injury, which stems from increased levels of nonpoint pollution in Washington's waters that, in turn, negatively impact local populations of threatened and endangered species such as Upper Columbia River steelhead and Southern Resident killer whales. (Dkt. No. 18 at 14–16.) This is sufficient to meet NWEA's burden for establishing a procedural injury associated with its ESA Section 7 claim at this stage in the proceeding.

The Court DENIES Defendants' motion to dismiss Claim #6 due to a lack of subject matter jurisdiction.

### B.     NWEA Asserts Claims Upon Which Relief Can be Granted

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672 (internal quotations omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez*, 487 F.3d at 1249 (quotation omitted). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

####   1.     Claim #1: Failure to Render a Final Decision on Washington's Coastal Nonpoint Program

NWEA asserts that CZARA affirmatively requires EPA and NOAA to disapprove a state's Coastal Nonpoint Program if it does not meet applicable criteria. (Dkt. No. 18 at 27.) NWEA further asserts that EPA and NOAA routinely fail to fulfill this obligation through a practice of conditionally approving state Coastal Nonpoint Programs. (*Id.* at 10–11.)

Under this practice, when a state submits a Coastal Nonpoint Program not meeting applicable criteria, the agencies note the deficiencies in the program, identify conditions that must be satisfied before full approval can occur, and conditionally approve an otherwise deficient program. (*Id.* at 10.) NWEA claims this practice is intended to circumvent having to reduce Program Assistance Grants to otherwise ineligible recipients. (*Id.*)

NWEA further asserts Washington's Program is deficient, thereby requiring disapproval, in that it fails to address the following considerations: critical coastal areas, agricultural and forestry nonpoint source pollution, pesticide pollution, failing septic and urban stormwater runoff, and the effects of livestock and concentrated animal feeding operations. (*Id*. at 20.) At this stage in the proceeding, this Court takes NWEA's allegations as true. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The Court concludes that NWEA has sufficiently plead deficiencies in Washington's Coastal Nonpoint Program.

Where NWEA's Claim #1 fails is not in its allegations of deficiencies, but in its interpretation of the relevant statute. Agencies clearly have a statutory mandate to *approve* submitted Coastal Nonpoint Programs meeting the applicable criteria. The statute reads as follows: "Within 6 months after the date of submission by a State . . . the [agencies] shall jointly review the program. The program shall be approved if" the agencies conclude that the program "meet[s] the requirements of this section." 16 U.S.C. § 1455b(c)(1). But nothing in the statute mandates that EPA and NOAA affirmatively *disapprove* a program not meeting applicable criteria. *Id.* Therefore, no legal basis exists for this court to order the agencies to definitively act on Washington's Coastal Nonpoint Program where they are not required by the statute to do so.

Claim #1 fails to state a claim for which relief can be granted. The Court GRANTS Defendants' motion to dismiss Claim #1 on this basis.

2. <u>Claims #2–3: Failure to Withhold Required Amounts From Washington's CWA Assistance Grants and Coastal Assistance Grants</u>

NWEA asserts that because EPA and NOAA have not definitively approved Washington's Coastal Nonpoint Program, the agencies must withhold amounts from CWA Assistance Grants and Coastal Assistance Grants to the State. (Dkt. No. 18 at 28–29) (citing 16 U.S.C. § 1455b(c)(3), (4)). Defendants counter that an "approval with . . . conditions constitutes

approval of Washington's Coastal Nonpoint Pollution Control Program." (Dkt. No. 21 at 31.)

Defendants' argument is untenable under the plain language of the statute. The agencies have not determined that "the program . . . meet[s] the requirements of the section." 16 U.S.C. § 1455b(c)(1). Absent this determination, CZARA is clear. The agencies "shall withhold" the required amounts from Washington's CWA Assistance Grants and Coastal Assistance Grants. 16 U.S.C. § 1455b(c)(3), (4). EPA and NOAA have failed to do so. They have not finally approved Washington's Coastal Nonpoint Program, while awarding upwards of $83 million in Program Assistance Grants to Washington through 2016. (Dkt. No. 18 at 26.) None of the grants were reduced by the required statutory amount. (*Id*.) On this basis, the agencies have failed to meet their statutory obligation.

The Court DENIES Defendants' motion to dismiss Claims #2–3 for failure to state a claim for which relief can be granted.

      3. <u>Claim #4: Approval of Washington's 2015 Update to its CWA Nonpoint Program</u>

EPA originally approved Washington's CWA Nonpoint Program in 1989. (Dkt. No. 18 at 18.) NWEA challenges Washington's 2015 update to its Program. (*Id*. at 30.) NWEA asserts that EPA approved the 2015 update even though the updated program did not satisfy program criteria. (*Id*.) Defendants counter that an update to a CWA Nonpoint Program is not subject to the program criteria articulated by CWA Section 319. (Dkt. No. 21 at 33–34.)[1]

The statutory text does not support Defendants' argument. CWA Section 319 clearly

---

[1] Defendants also assert that this is not an actionable claim under the APA because there is no law to apply to the update. (Dkt. No. 35 at 17–18) (citing *Heckler v. Cheney*, 470 U.S. 821, 830 (1985). But as discussed below, the law to apply to the update is clear—the standards articulated in CWA Section 319. *See* 33 U.S.C. § 1329(b)(2).

indicates that program requirements apply to "[e]ach management program proposed for implementation." 33 U.S.C. § 1329(b)(2). Washington's 2015 program update was "proposed for implementation." *Id*.; (*see* Dkt. No. 18 at 18, 19, 31.) Therefore, the update is subject to the same standards as the original program—those articulated by CWA Section 319. See 33 U.S.C. § 1329(b)(2)(A)–(F). Nor is Defendants' argument plausible. An updated program could reasonably be interpreted to be a new program. Section 319 Program requirements apply to a new program. 33 U.S.C. § 1329(b)(2).

The Court DENIES Defendants' motion to dismiss Claim #4 for failure to state a claim for which relief can be granted.

        4.    <u>Claim #5: Satisfactory Progress Determinations for Washington's CWA Nonpoint Program</u>

CWA Section 319 precludes EPA from making CWA Assistance Grants to states who fail to make satisfactory progress towards the implementation schedule contained within a CWA Nonpoint Program. 33 U.S.C. § 1329(h)(8). NWEA challenges the grants made to Washington in 2015 and 2016 based on a lack of progress in implementing its Program. (Dkt. No. 18 at 31.) According to NWEA, Washington did not have sufficient nonpoint pollution control practices in place to protect water quality during those years, and EPA was aware of this deficiency. Therefore, EPA's satisfactory progress determinations were arbitrary and capricious and the grants were unlawful. (*Id*. at 19, 30–31.) Defendants' have no meaningful rebuttal, other than to rely on an extension of their argument for Claim #4—that the 2015 update does not present a standard for which EPA can be held accountable for purposes of satisfactory progress determinations. (Dkt. No. 21 at 34.) The Court previously dismissed Defendants' argument for

Claim #4 and, by extension, similarly dismisses the argument for purposes of Claim #5.[2]

The Court DENIES Defendants motion to dismiss claim #5 for failure to state a claim for which relief can be granted.

     5.   <u>Claim #6: Failure to Engage in ESA Section 7 Consultation</u>

NWEA's final claim is comprised of four subclaims. Each represents a distinct agency action for which NWEA asserts that ESA Section 7 consultation was required but did not occur: (1) EPA's approval of Washington's 2015 update to its CWA Nonpoint Program; (2) EPA's 2015 and 2016 satisfactory progress determinations for Washington's CWA Nonpoint Program; (3) EPA's approval of the full amount of 2015 and 2016 CWA Assistance Grants to Washington; and (4) NOAA's approval of the full amount of Coastal Assistance Grants, despite the lack of an approvable Coastal Nonpoint Program. Defendants' move to dismiss only the second and fourth subclaims. (Dkt. No. 21 at 35–38.)

Regarding the second subclaim, Defendants argue that EPA's 2015 and 2016 satisfactory progress determinations were retrospective assessments of Washington's progress towards the goals articulated in its CWA Nonpoint Program. (Dkt. No. 21 at 38.) As such, Defendants assert that EPA had no discretion when making its satisfactory progress determinations to prospectively benefit listed species. (*Id*. at 37–38.) On this basis, Defendants assert the progress determinations do not meet the second prong of *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012). The second prong of *Karuk Tribe's* provides that ESA Section 7 consultation is only required when the agency "had some discretion to influence or change the activity for the benefit

---

[2] Nor is the Court persuaded by Defendants' argument that the issue is moot as to previous Section 319 grants. These are acts capable of repetition yet could avoid review. *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774 (9th Cir. 2012).

of the protected species." *Id.* at 1021. The Court disagrees with Defendants' position, as it relies upon a false premise that EPA has no discretion in the factors it considers in making its CWA Section 319 progress determinations. In fact, EPA has great discretion in determining how satisfactory progress is measured. It has exercised this discretion, for example, both in the promulgation of related regulations, *see* 40 C.F.R. §§ 35.260–.268, and informal guidance (Dkt. No. 25, Ex. A at 70). Furthermore, this discretion must be viewed in light of Washington's CWA Nonpoint Program objectives, which include "initiatives to [s]upport Salmon Recovery in Washington" and other measures directly aimed at improving the health of threatened and endangered species. (Dkt. No. 25 at 21.) On this basis, EPA's progress determinations could prospectively benefit listed species. That is all that is required to trigger an ESA Section 7 consultation requirement. *See* 16 U.S.C. § 1536(a)(2).

Regarding the fourth subclaim, the Court holds above that Defendants' obligation to reduce Coastal Assistance Grants for unapproved Coastal Nonpoint Programs is nondiscretionary. *See* discussion *supra* Section II.B.2. Therefore, as is also described above, ESA Section 7 consultation is not required when reducing Coastal Assistance Grants by the statutory amount. *See Karuk Tribe of Cal.*, 681 F.3d at 1024.

The Court DENIES Defendants motion to dismiss the second subclaim but GRANTS Defendants' motion to dismiss the fourth subclaim for failure to state a claim for which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 21) is GRANTED as to Claim #1 and the fourth subclaim of Claim #6. These claims are dismissed with prejudice because, as a matter of law, NWEA will be unable to state a claim for which relief can be

1  granted. Defendants motion is DENIED as to claims #2, 3, 4, 5, and subclaims 1-3 of Claim #6.

3  DATED this 19th day of September, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE