THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ENVIRONMENTAL ADVOCATES,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,

        Defendants.

CASE NO. C16-1866-JCC

ORDER DENYING MOTION TO INTERVENE

This matter comes before the Court on the Washington State Farm Bureau Federation's ("WFB") and the Washington Cattlemen's Association's ("WCA") motion to intervene (Dkt. No. 67). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

**I.    BACKGROUND**

WFB and WCA (collectively "Proposed Intervenors") seek to join Defendants—the U.S. Department of Commerce ("Commerce"), the National Oceanic and Atmospheric Administration ("NOAA"), and the Environmental Protection Agency ("EPA") (collectively "Federal Agencies"); and the existing intervenor Washington state—in this environmental suit. (Dkt. No. 67.) Proposed Intervenors move to intervene either as of right or permissively under Federal

Rule of Civil Procedure 24. (Dkt. No. 67 at 3–11.)

Plaintiff Northwest Environmental Advocates ("NWEA") brings this Administrative Procedure Act ("APA") suit asserting that its members have been harmed by Federal Agencies' actions or inactions under the Clean Water Act ("CWA") and the Coastal Zone Act Reauthorization Amendments ("CZARA"), the latter of which represents a portion of the Coastal Zone Management Act ("CZMA"). (Dkt. No. 74 at 1–2.) NWEA also brings an Endangered Species Act ("ESA") citizen suit, alleging that Federal Agencies have unlawfully failed to consult on the EPA's approvals and funding of Washington's Nonpoint Source Pollution Management Programs. (*Id.*) This Court previously articulated relevant background information and summarized the associated statutory schemes in its order granting in part and denying in part Defendants' motion to dismiss, and will not repeat that information here. (Dkt. No. 39.)

Proposed Intervenors claim that, should NWEA prevail, the farmers and ranchers they represent will be directly affected by a loss of CZMA and CWA grant funds that support Washington's nonpoint source pollution programs and the development of best management practices ("BMPs"), and by regulatory costs that may arise from a finding that the EPA arbitrarily approved Washington's CWA Section 319 Nonpoint Management Program. (Dkt. No. 67 at 6–7, 9.) Proposed Intervenors also allege that they would be harmed by additional layers of regulatory approval resulting from a court order compelling Federal Agencies to engage in ESA consultation. (*Id.* at 6–7.) The Court previously granted Washington's unopposed motion to intervene on behalf of the Federal Agency defendants (Dkt. No. 79). Federal Agencies oppose WFB's and WCA's intervention (Dkt. No. 80).

## II. DISCUSSION

### A. Intervention as of Right

Absent an unconditional right to intervene by statute, a party seeking to intervene as a matter of right must: (1) timely move to intervene, (2) have a significantly protectable interest relating to the property or transaction that is the subject of the action, (3) be situated such that the

disposition of the action may impair or impede the party's ability to protect that interest, and (4) not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); Fed. R. Civ. P. 24(a)(2). The burden is on the intervenors to demonstrate all four prongs. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *State ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The Supreme Court has yet to clearly define an interest that satisfies Rule 24(a)(2). *See Arakaki*, 324 F.3d at 1084 (stating that the phrase "significantly protectable" is not a term of art in law and "sufficient room for disagreement exists" over its meaning). The Ninth Circuit views the "interest test" as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 985 (9th Cir. 2008) (internal quotes omitted). When injunctive relief is sought that will have "direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2)." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995). Whether resolution of an action will impair or impede a proposed intervenor's ability to safeguard their protectable interest is considered as "a practical matter." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016). However, intervention is improper where intervenors have an "alternative forum where they can mount a robust defense." *Lockyer*, 450 F.3d at 442.

To determine if a proposed intervenor is adequately represented, the Court considers "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

ORDER DENYING MOTION TO INTERVENE
C16-1866-JCC
PAGE - 3

proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. The burden on proposed intervenors to show that the current representation is inadequate normally "is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Id.* (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). But when the would-be intervenor shares the same interest as a government entity party, absent a "very compelling showing to the contrary," a presumption that the government entity adequately represents the intervenor applies. *Arakaki*, 324 F.3d at 1086. This presumption can be overcome if the intervenor makes a compelling showing of distinct "parochial interests." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011).

Proposed Intervenors timely moved to intervene. The remaining factors, by claim,[1] are discussed below.

### 1. Claims #2–3:[2] Failure to Withhold Required Amounts From Washington's CWA Assistance Grants and Coastal Assistance Grants

Proposed Intervenors allege both general and specific interests in NWEA's procedural claims. Their general allegation—that defunding Washington's CZARA Coastline Nonpoint Pollution Management Program and its 2015 CWA Nonpoint Program "will directly impact . . . their members' agricultural and livestock operations"—is unpersuasive for its lack of specificity. (Dkt. Nos. 67 at 6–7, 67-5 at 5.)

As to a specific interest, Proposed Intervenors assert that they receive CWA Section 319 funds to mitigate their nonpoint pollution sources, and that the loss of these funds will detrimentally affect programs in which their members are directly involved. (Dkt. No. 67 at 2, 6–7.) According to Proposed Intervenors, these federal funds—though initially distributed to

---

[1] Motions to intervene may be entertained on a claim-by-claim basis. *See United States ex rel. Voss v. Monaco Enters.*, No. 2:12-CV-0046-LRS, slip op. at 7–8 (E.D. Wash. July 1, 2016).

[2] The Court previously dismissed NWEA's Claim #1 (failure to render a final decision on Washington's Coastal Nonpoint Program) and fourth sub-claim of Claim #6 (failure to consult on NOAA's approval of full amount of Coastal Assistance Grants, despite a lack of an approvable Coastal Nonpoint Program). (Dkt. No. 39 at 10, 14.)

Washington's Department of Ecology ("Ecology")—are subsequently distributed to a "variety of municipalities . . . and other organizations" to support a network of water quality programs that depend on execution by their members.[3] (Dkt. Nos. 67-5 at 2–5, 67-4 at 2–3.) Proposed Intervenors assert these programs offer "educational outreach," "review and certification of farming practices," "technical … and financial assistance," "cost-share practices such as riparian planting," and "training." (Dkt. Nos. 67 at 7, 83 at 5.) According to Proposed Intervenors, Farmed Smart Sustainable Agricultural Certification is one example of a CWA Section 319 program reliant on the grants at issue. (Dkt. No. 67-4 at 3.) Another is the Conservation Reserve Enhancement Program, which is funded in part by Section 319 grants and pays WFB member-landowners "rent" to plant shrubs and "improve stream conditions." (*Id.* at 3–4.) Given the ways their members directly participate in the implementation of Washington's federal CWA and CZMA funds, Proposed Intervenors argue that they maintain "a direct economic interest and legal stake" in the outcome of this suit. (Dkt. No. 67-5 at 2–3.)

Federal Agencies argue that Proposed Intervenors' interests would not be practically impaired or impeded by NWEA's action "because their interests . . . could be (if at all) only indirectly affected by the outcome of this case based on actions the State of Washington may or may not take." (Dkt. No. 80 at 4.) The Court disagrees. Though Proposed Intervenors' interests depend on Ecology's initial receipt of federal funds, Federal Agencies concede that Proposed Intervenors "are precisely the types of entities who are eligible to receive funding to implement the State's nonpoint source control program[s] . . . funded in part by federal grants under the CZMA and CWA." (Dkt. No. 80 at 9.)

---

[3] Federal grants are distributed to organizations like WFB and WCA through Ecology's policy of "generally defer[ing]" the implementation of programs designed to address specific categories of nonpoint source pollution. (Dkt. No. 83 at 4–5.) The State's Water Quality and Advisory Committee, which WFB co-chairs with Ecology and in which WCA sits as a member, is responsible for implementing control programs for the agricultural category of nonpoint source pollution. (Dkt. No. 83 at 3–4.)

In light of the structure with which Ecology administers CZMA and CWA grants, Proposed Intervenors' fear—that injunctive relief in favor of NWEA will have a "direct, immediate, and harmful effect" upon their interests—is reasonable. *See Forest Conservation Council*, 66 F.3d at 1494. Proposed Intervenors provide specific, concrete examples of programs that directly affect their members; contextualize their participation in Ecology's practice of category-specific deferment; and sufficiently illustrate how resolution of the matter "may as a practical matter impair or impede their ability to safeguard their protectable interest." *Smith*, 830 F.3d at 862.

However, Proposed Intervenors' interest in Claims #2–3 is wholly eclipsed by Washington's identical interest in ensuring the grants continue. "The most important factor to determine whether a proposed intervenor is adequately represented by a present party to the action is how the intervenor's interest compares with the interest of existing parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009) (internal quotes and citations omitted). Here, Washington has intervened to defend the validity of its nonpoint pollution control program, as well as its receipt of "the funding Ecology relies on to implement Washington's nonpoint pollution control programs." (Dkt. No. 66 at 7.) Any parochial or specialized knowledge Proposed Intervenors would offer in the adjudication of Claims #2–3, i.e., their "key, unique perspectives in how guidance should be developed to improve water quality from agricultural runoff," do not rebut Washington's comparable (and likely superior) Ecology-related expertise. (Dkt. No. 83 at 4); *see Prete v. Bradbury*, 438 F.3d 949, 958–59 (9th Cir. 2006) (finding "specialized knowledge" by proposed intervenor insufficient to show inadequate representation where there was "no evidence to support their speculation that the Secretary of State lacks comparable expertise"); *see also City of Los Angeles*, 288 F.3d at 402–03 (holding that "mere[] differences in [litigation] strategy" are insufficient grounds to "justify intervention as a matter of right").

The Court DENIES Proposed Intervenors' motion to intervene as of right on Claims #2–3.

## 2. Claims #4–5: Approval of Washington's 2015 Update to its CWA Nonpoint Program and Satisfactory Progress Determinations for Washington's CWA Nonpoint Program

NWEA asks the Court to find EPA arbitrarily approved Washington's CWA Section 319 Nonpoint Management Program and arbitrarily granted the State funds based off of an unjustified "satisfactory progress" finding. (Dkt. No. 74 at 29–32.) Proposed Intervenors allege that if NWEA prevails on Claims #4–5, it "*could* mean that certain buffers and other management practices used by [Proposed Intervenors] to protect water quality are inadequate to comply with the law, would diminish the benefit of [Proposed Intervenors'] participation in TMDL planning, [and] *could* increase costs." (Dkt. No. 67 at 9) (emphasis added). Proposed Intervenors further allege that because they are "neck deep in helping to develop those measures" and are "already directly involved in developing the agricultural measures being challenged as insufficient to justify further program defunding," Federal Agencies are "plainly wrong" for challenging their interest in ensuring that Ecology's program is not invalidated. (Dkt. No. 83 at 5–6.) The Court does not agree.

Proposed Intervenors' interest "falls far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right." *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)). This is particularly true in this case, where the "special solicitude" afforded to Plaintiff's interest in *Alaska Center for the Environment v. Browner* would not apply to Proposed Intervenors. 20 F.3d 981, 984 (9th Cir. 1994). Here, Proposed Intervenors bring suit not to "protect the public health or welfare, enhance the quality of water, and serve the purposes of [the CWA]," § 1313(c)(2)(A), but to protect their interest in "viable, economic management of their farms and ranches." (Dkt. Nos. 67 at 6, 74 at 6–7).[4]

---

[4] Furthermore, intervention is improper in that Proposed Intervenors may defend their operational reliance on existing BMPs in an alternate forum when it is actually and practically impaired (e.g., during the notice-and-comment rulemaking period that may result following a holding on NWEA's behalf). *See Lockyer*, 450 F.3d at 442.

In addition, existing parties adequately represent Proposed Intervenors' interests in these claims. If NWEA succeeds, it is Washington, not Proposed Intervenors, who will be unable to rely on Federal Agencies' prior approval of its CWA Section 319 Nonpoint Program. (Dkt. No. 66 at 5.) Proposed Intervenors would differentiate their "ultimate objective[]" from Federal Agencies' by the fact that Federal Agencies do not participate in the Advisory Committee tasked with creating the programs at issue in NWEA's claims. (Dkt. No. 83 at 6.) However, Ecology does, and mere committee membership is not a parochial interest compelling enough to rebut the presumption that existing government entities will adequately represent their shared "ultimate objective: that the Federal Agencies' determinations be upheld under the relevant statutes." (Dkt. Nos. 80 at 6, 83 at 8); *see Citizens for Balanced Use*, 647 F.3d at 899. Insofar as Proposed Intervenors' interests relate to those of existing parties', the Court finds that they are neither procedurally nor substantively "parochial" in any distinguishable sense, but the same. *Citizens for Balanced Use*, 647 F.3d at 899.

The Court DENIES Proposed Intervenors' motion to intervene as of right on Claims #4–5.

### 3. Claim #6: Failure to Engage in ESA Section 7 Consultation

Proposed Intervenors' interest in NWEA's ESA action lies in potential costs saved by avoiding an additional layer of federal regulatory approval. (Dkt. No. 67 at 6, 7.) The Court declines to find a significantly protectable interest here, as Proposed Intervenors fail to allege a relationship between their interest and Claim #6 that is more than theoretical. *See Lynch*, 307 F.3d at 803 (denying intervention to an applicant whose "undifferentiated, generalized interest in the outcome of an ongoing action" was "too porous a foundation on which to premise intervention as of right") (internal quotes and citations omitted). Further, Proposed Intervenors do not purport to bring any necessary or novel elements to the adjudication of this procedural claim, and fail to illustrate how the Court's holding on this matter would impact them. Proposed Intervenors fail to carry their burden. *Arakaki*, 324 F.3d at 1083.

The Court DENIES Proposed Intervenors' motion to intervene as of right on Claim #6.

### B. Permissive Intervention

An applicant seeking permissive intervention must prove three threshold requirements: (1) it shares common questions of law or fact with the main action; (2) its motion is timely, and (3) a court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*, 159 F.3d at 412. But once these conditions for permissive intervention are met, intervention rests in the sound discretion of the Court. *Id.* In exercising its discretion, the Court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. *See* Fed. R. Civ. P. 24(b)(2). The Court may also consider "whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit." *Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (internal citations omitted). Even if Proposed Intervenors satisfy the threshold requirements, the Court exercises its discretion to deny permissive intervention. Existing parties will adequately represent the interests of Proposed Intervenors in Claims #2–3, Proposed Intervenors have failed to plead protectable interests for Claims #4–6, and further intervention would be likely to cause undue delay in the litigation.

The Court DENIES Proposed Intervenors' motion to permissively intervene on Claims #2–6.

### III. CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion to intervene (Dkt. No. 67) is DENIED.

DATED this 7th day of March 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE