Caroline Lobdell, WSBA #38658
Shay S. Scott, WSBA #23760
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 327
Portland, Oregon 97219
Telephone: (503) 768-8500
Fax: (503) 222-3255
clobdell@wrlegal.org
sscott@wrlegal.org

Attorneys for *Amici Curiae*

The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, | Case No. 2:16-cv-01866-JCC |
| Plaintiff, | ***AMICI CURIAE* BRIEF OF WASHINGTON STATE FARM BUREAU FEDERATION AND WASHINGTON CATTLEMEN'S ASSOCIATION ON THE SUBJECT OF REMEDY** |
| v. | |
| THE U.S. DEPARTMENT OF COMMERCE, et al., | |
| Defendants, | |
| and | |
| WASHINGTON STATE, | |
| Defendant-Intervenor, | |
| and | |
| WASHINGTON STATE FARM BUREAU FEDERATION and WASHINGTON CATTLEMEN'S ASSOCIATION, | |
| Amici Curiae. | |

*AMICI CURIAE* BRIEF ON REMEDY – 1
2:16-cv-01866

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

# INTRODUCTION

*Amici Curiae* Washington State Farm Bureau Federation (WFB) and Washington Cattlemen's Association (WCA), submit this brief on remedy pursuant to a stipulation and order. Dkt. 98, 99. The Court entirely denied the WFB and WCA motion to intervene, Dkt. 84, which is currently on appeal. Dkt. 94. WFB and WCA filed a motion for partial stay of proceedings to defer action on the remedy until their appeal was resolved. Dkt. 95. The parties conferred on the motion for partial stay, and agreed to a stipulation for WFB and WCA to appear as *Amici Curiae* on the remedy, and WFB and WCA agreed to withdraw their motion for partial stay while maintaining their appeal. Dkt. 98, 100.

The Ninth Circuit has recognized that intervention is not the same as amicus status and that when a non-party has a protectable interest that may be impaired by the outcome of a lawsuit, becoming an intervenor is the only sufficient means for that non-party to defend its rights. *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 400 (9th Cir. 2002) ("However, amicus status is insufficient to protect [a prospective intervenor's] rights because such status does not allow the [prospective intervenor] to raise issues or arguments formally and gives it no right of appeal.") (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (*en banc*)).

*Amici* dispute that there is any legal violation. However, if the Court finds a legal violation, then the Court is presented with a binary option—to remand with or without vacatur. For the reasons given below, *Amici* respectfully request that if there is a legal violation, then the Court remand without vacatur. Plaintiff also has not shown it satisfies the standard for a Court

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

ordered injunction that would halt future funding of beneficial programs to reduce coastal

nonpoint source pollution or compel return of any prior funds granted to Washington.

## STANDARD

Under the APA, a court "shall . . . hold unlawful and set aside agency action, findings,

and conclusions" that result from violations of the APA. *See* 5 U.S.C. § 706(2). The default

remedy for such violations is remand with vacatur. *See Humane Soc'y v. Locke*, 626 F.3d 1040,

1053 n.7 (9th Cir. 2010) (noting remand without vacatur may occur "[i]n rare circumstances").

"[W]hen equity demands," however, a court may order the agency to correct the identified

deficiencies without upsetting the status quo. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392,

1405 (9th Cir. 1995). In evaluating the balance of equities, courts "weigh the seriousness of the

agency's errors against 'the disruptive consequences of an interim change that may itself be

changed.'" *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015)

(quoting *Cal. Communities Against Toxics v. EPA* (*Cal. Cmties.*), 688 F.3d 989, 992 (9th Cir.

2017)). This is often called the "*Allied–Signal* test." *See Allied–Signal, Inc. v. U.S. Nuclear*

*Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). In the environmental context,

courts "consider whether vacating a faulty rule could result in possible environmental harm, and

. . . have chosen to leave a rule in place when vacating would risk such harm." *Pollinator*

*Stewardship Council*, 806 F.3d at 532. An additional consideration is whether the agency "could

adopt the same rule on remand, or whether such fundamental flaws in the agency's decision

make it unlikely that the same rule would be adopted on remand." *Id.*

In fashioning a remedy that adequately addresses the injuries complained of by a plaintiff,

a court may enter an injunction to that effect. The availability of "a less drastic remedy (such as

partial or complete vacatur . . . ) [that is] sufficient to redress [that plaintiff's] injury" renders the

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

"extraordinary relief of an injunction . . . [un]warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 156–57 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "While '[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court,' the 'traditional principles of equity' demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014) (quoting *eBay Inc.*, 547 U.S. at 391, 394). Furthermore, "to the extent that the vacatur . . . sought by a [p]laintiff[] would have the effect of injunctive relief," the traditional four-factor test must be satisfied. *See Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, CV 12-9861-GW(SSX), 2016 WL 4445770, at *6 (C.D. Cal. Aug 12, 2016); *but cf. N. Coast Rivers All. v. U.S. Dept. of the Interior*, 1:16-CV-307-LJO-MJS, 2016 WL 8673038, at *6 n.2 (E.D. Cal. Dec. 16, 2016) (noting "there is some authority to support application of . . . [the four factor test] to a request for vacatur that would have the same operative effect as an injunction," which it describes as "arguably more onerous" than the *Allied-Signal* test).

## ANALYSIS

**I.    The Court should decline Plaintiff's invitation to vacate the underlying decisions because the resulting disruption to grant recipients in Washington, which include programs that reduce nonpoint source pollution, outweighs the practical effect of withholding those funds to otherwise ensure compliance with CZARA.**

The Court's ability to deviate from the strict language of the APA, which requires an unlawful agency action to be "set aside," *see* 5 U.S.C. § 706(2), derives from its broad equitable

*AMICI CURIAE* BRIEF ON REMEDY – 4
2:16-cv-01866

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

powers. *See Tinoqui-Chalola Council of Kitanemuk and Yowlumne Tejon Indians v. U.S. Dept. of Energy*, 232 F.3d 1300, 1305 (9th Cir. 2000) (citing *Sea–Land Serv. Inc. v. Int'l Longshoremen's & Warehousemen's Union,* 939 F.2d 866, 870 (9th Cir. 1991) ("This court retains broad discretion to fashion equitable remedies [under the APA].")). In the instant case, equity demands preservation of the funding for numerous programs in Washington that advance the statutory goals of preserving sensitive coastal environments and clean water, even when the enabling agency action is defective. *See Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007) ("Where the public interest is involved, 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'") (quoting *United States v. Alisal Water Corp.*, 431 F.3d 643, 654 (9th Cir. 2005)). Plaintiff's argument to the contrary cannot refute the harm that will invariably result from cutting off funding to these programs to reduce coastal nonpoint pollution.

In applying the *Allied-Signal* test, the degree of the agency's error is weighed against the potential for disruption resulting from vacatur. *See Allied-Signal*, 988 F.2d at 151–52. For the reasons discussed in more detail below, if the Court finds procedural error in the conditional approval of a Coastal Nonpoint Program, the scope of disruption of halting funding for, and reaching back over five years to defund, beneficial actions to reduce pollution militate against vacatur.

## A. Seriousness of the Agencies' Errors

Under the *Allied-Signal* test, the first area of inquiry involves the "seriousness" of the errors made by the agency, which it must correct on remand. *See Allied-Signal*, 988 F.2d at 151–52. Plaintiff alleges a *procedural* violation under its second and third claims. Dkt. 74, Second Am. Compl. ¶¶ 83–92. Because the Court is not asked to rule on the *substance* of the Coastal

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

Nonpoint Program's approvability, which determines the allocation of grant funding, the total field of errors that could be used in this analysis is limited and greatly circumscribed. *See generally* Dkt. No. 39 at 3:11–3:23 (summarizing the substance of Plaintiff's six claims). Nevertheless, assuming Plaintiff prevails on each error presented in its second and third claims, those errors are procedural and relatively minor, which counsels against rigid application of vacatur.[1]

Plaintiff's second and third claims share a framework differing only in the relevant agency and funding source. *Compare* Second Am. Compl. ¶¶ 83–87 (alleging an APA violation resulting from NOAA's distribution of CZMA grant funds to Washington), *with id.* ¶¶ 88–92 (alleging an APA violation resulting from EPA's distribution of CWA grant funds to Washington). In both claims, which *Amici* dispute but take as established for the purposes of this brief, the relevant agency has distributed grant funds despite Washington's "fail[ure] to submit an approvable Coastal Nonpoint Program." *See id.* ¶¶ 84, 89. While Washington has submitted a Coastal Nonpoint Program, Plaintiff does not address its substantive deficiencies, if at all, in the two claims presently before the Court.[2] *See, e.g.*, Dkt. 39 at 10–11 (holding, in denying motion to

---

[1] In a number of cases, courts have bifurcated the resolution of similar issues, addressing the merits before the question of appropriate remedy. *See, e.g.*, *Nat'l Tr. for Historic Pres. v. Suazo*, CV-13-01973-PHX-DGC, 2015 WL 3613850, at *1 (D. Ariz. June 9, 2015) (resolving Plaintiff's motion for an injunction following the Court's earlier grant of summary judgment); *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 282 F. Supp. 3d 91, 94 (D. D.C. 2017) (following a prior order partially remanding an agency's determination, "the Court asked the parties to [brief an answer to]: what is the proper remedy during this remand period?"). Plaintiff's piecemeal approach, however, means that due consideration cannot be given to any errors determined subsequent to those identified in resolving Plaintiff's second and third claims. In the event the Court prefers to defer consideration of the remedy issue until after addressing the merits of Plaintiff's claims, *Amici* respectfully request the Court permit them to be heard again on the issue at that time, which will be formally requested in a motion should the need arise.

[2] Plaintiff's first claim alleges an APA violation by the Agencies' failure to issue "a final decision approving or disapproving Washington's Coastal Nonpoint Program." *See* Second Am.

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

dismiss Plaintiff's second and third claims, that the Agencies' partial approval of the Coastal Nonpoint Program by definition falls short of the statutory requirement to avoid grant withholding) (citing 16 U.S.C. § 1455b(c)). Instead, the sole error underlying each claim is an agency failure to withhold grant funds in the absence of an approvable program. *Id.* ¶¶ 86, 91; *see also* Dkt. 91, Pl.'s Part. Mot. S. J. (hereinafter, "Pl.'s PMSJ") at 13–14 (noting the Agencies' effective admissions that they have not approved Washington's program) (quoting CZ0009768– CZ0009769).

In the present procedural posture, the relevant error is the Agencies' distribution of grant funds allegedly in violation of 16 U.S.C. §§ 1455b(c)(3), (4) (requiring the relevant agency head to withhold grant funds from a state that "failed to submit an approvable program as required by this section"). Plaintiff argues that this is effectively a ministerial matter and by conditionally approving Washington's program, the Agencies tacitly acknowledged that Washington's program was deficient in one or more areas. *See generally* Pl.'s PMSJ at § II(C)(3). Thus, Plaintiff contends that the grant funds must be withheld and clawed back.

Under claims two and three, Plaintiff alleges that the Agencies have made procedural, rather than substantive, errors. On remand, the Agencies must make a binary determination, within the timeframe set by the Court, whether Washington has "failed to submit an approvable program." *See* 16 U.S.C. §§ 1455b(c)(3), (4). However, what is not presently at issue is the

---

Compl. ¶¶ 79–82. It does not, however, address the standards the Agencies should apply and whether the Coastal Nonpoint Program meets those standards. *See generally id.* Plaintiff's fourth claim alleges that Washington's Section 319 plan does not meet the relevant statutory requirements, rendering EPA's 2015 approval an APA violation. *See id.* ¶¶ 93–98. Plaintiff's fifth claim alleges EPA's determinations that Washington was making "satisfactory progress" in implementing its Section 319 plan violated the APA because of the deficiencies in the plan itself. *See id.* ¶¶ 99–104. Finally, Plaintiff's sixth claim alleges the Agencies violated the Endangered Species Act by failing to consider the potential impact of its Section 306 and Section 319 grants on listed species or critical habitats. *See id.* ¶¶ 105–108.

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

Agencies' substantive evaluation of that program. Should the statutory condition precedent be satisfied on remand by Washington's submission of an approvable program, the statutory withholding of grant funds will be *ipso facto* lifted. *See Pollinator*, 806 F.3d at 532 (suggesting remand without vacatur may be appropriate where the agency could "adopt the same rule on remand"); *Allied–Signal*, 988 F.2d at 151 (rejecting vacatur because there was "a serious possibility that the [agency could] substantiate its decision on remand"). Because Plaintiff has not established that the Agencies, on remand, will be effectively prohibited from disbursing further program funds to Washington, vacatur is not appropriate. *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, CV 12-9861-GW(SSX), 2016 WL 4445770, at *7 (C.D. Cal. Aug. 12, 2016) (finding that "the problems arose from the agency's procedural deficiencies and/or questions as to the sufficiency of its analysis" rather than "substantive decisions . . . that were demonstrably wrong" supported remand without vacatur).

Plaintiff acknowledges that the errors presented in the second and third claims are procedural. However, from this conclusion, Plaintiff argues that the severity of the procedural deficiencies embodied in these errors warrants vacatur, relying solely on the resulting diminution in coercive power to ensure compliance. *See* Pl.'s PMSJ at 23–24. The cases cited by Plaintiff in support, however, are factually distinguishable. In *Heartland Reg. Med. Ctr. v. Sebelius*, 566 F.3d 193 (D.C. Cir. 2009), the court approved of vacatur "when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it." *Id.* at 199. In *Ctr. for Envtl. Health v. Vilsack*, 15-CV-01690-JSC, 2016 WL 3383954 (N.D. Cal. June 20, 2016), the court approved vacatur when the agency did not provide "notice and an opportunity to comment." *Id.* at *11. Both cases involve correcting agency errors which will likely change the way that agency exercises its discretion in the second instance. *See Vilsack*,

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

2016 WL 3383954, at *11 ("[B]ut whether they will [exercise their discretion similarly] after the required notice and comment procedures is far from certain."); *Heartland*, 566 F.3d at 199 (noting a rule promulgated with a "wholly inadequate" explanation is "vacated for want of an essential procedural safeguard") (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 206–07 (1988)). Correcting the alleged errors, which do not involve discretionary decisions, only requires the Agencies to ascertain the binary status of Coastal Nonpoint Program—approvable or not approvable. Setting aside consideration of the nature of the Coastal Nonpoint Program and its evaluation, which are not errors identified by Plaintiff's second and third claims, the Agencies' uncomplicated decisions whether to withhold grant funds make it highly likely that they "will be able to justify future decisions that would follow the status quo." *See N. Coast Rivers All. v. U.S. Dept. of the Interior*, 1:16-CV-00307-LJO-MJS, 2016 WL 8673038, at *8 (E.D. Cal. Dec. 16, 2016) (citing *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048–49 (D.C. Cir. 2002)).

## B.    Disruption Caused by Vacatur

In light of the minor character of the procedural errors made by the Agencies, the disruption caused by vacatur, particularly to the environment, counsels the Court exercise its equitable discretion to leave in place the funding sources during remand to the Agencies.

Where the decision to vacate and remand would "risk [environmental] harm," the Ninth Circuit has left a "faulty rule" in place. *Pollinator*, 806 F.3d at 532 (9th Cir. 2015) (citing *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405–06; *Cal. Cmties.*, 688 F.3d at 994). Courts have also "consider[ed] economic and other practical concerns." *Pacific Rivers Council v. U.S. Forest Service*, 942 F. Supp. 2d 1014, 1018 (E.D. Cal. 2013) (citing *Cal. Cmties.*, 688 F.3d at 994).

Plaintiff's sole argument in support of vacatur is that withholding funding from Washington is a necessary stick to effectuate "the key deterrent to inadequate programs." Pl.'s

*AMICI CURIAE* BRIEF ON REMEDY – 9
2:16-cv-01866

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

PMSJ at 23. However, this proposition is dubious. Plaintiff's argument is premised on a flawed weighing of Congressional priorities. Plaintiff would seek to have the Court establish the primacy of a single motivator—the withholding of grant funding—at the expense of the two statutory schemes as a whole. The programs currently funded by the CZMA Section 306 grants, and those funded in the past, have had substantial, positive impacts on the very facets of Washington's environment that CZMA were originally enacted to protect. To do away with these programs, by cutting off their federal funding, will have a detrimental effect on reducing nonpoint source pollution.

In the instant case, the impact of the deterrent—withholding funding from various programs—is sufficiently divorced from the entities responsible for shepherding the Coastal Nonpoint Program through approval that any resulting "motive" force of vacatur is poorly aimed. Those who will most feel the consequences of withholding will be those who are unable to remedy, or cause to be remedied, the defects identified by the Court on remand; *Amici*, the citizens of Washington, and the environment itself will no longer benefit from the grant funds without being in a position to reverse their sudden absence. Because of this disconnect, the Court should exercise its broad equitable discretion to preserve this funding and, if needed, direct any compliance measures in the remand order at the parties involved in the process—Washington State and the Agencies.

The grants Plaintiff seeks the Court to order withheld are critical to funding a number of programs that have direct, positive impacts on the environment. Without funding, these programs will cease in whole or part, and their resurrection is not guaranteed when, or if, the grant funding resumes. *See Native Fish Soc. v. Nat'l Marine Fisheries Serv.*, 3:12-CV-00431-HA, 2014 WL 1030479, at *3–4 (D. Or. Mar. 14, 2014) (declining vacatur where it "would potentially cause

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

serious harm to the species in the near term" and it "would also be disruptive to the future operation of the Sandy Hatchery").

Some examples of the environmentally beneficial programs to address nonpoint pollution supported by CZMA funding include restoration of wetlands, CZ0000190 ("Ecology established a wetlands protection program, partially funded with federal Coastal Zone Management Act (CZMA) monies, to promote better management of both freshwater and tidal wetlands. . . . the Wetlands Program has provided CZMA funds to sponsor research on the relationships between wetlands and NPS pollution control."); shellfish protection, CZ0002564; and a program "designed to use water quality and quantity data and wildlife information to identify areas most suitable for protection, restoration, and development," CZ0011910-11. Moreover, NOAA "continues to encourage each and every state to maintain a full time staff coordinator for the CNP [Coastal Nonpoint Program] program and to use CNP implementation funds as necessary to provide salary and benefits to the coordinator. Support of other staff or consulting positions to carry out programmatic actions are also encouraged . . ." CZ0011277. Cutting off funds would defeat an objective Plaintiff seeks, by depriving Washington of money to support the staff that would work towards the completion of an approvable Coastal Nonpoint Program and implementing those portions of the Program that were approved.

The conditional approval also allows for funding to help assess which best management practices or management measures are being implemented and are both effective and "economically achievable" in the Coastal Nonpoint Plan as required by CZARA. 16 U.S.C. § 1455b(g)(5) (For purposes of this subsection, the term 'management measures' means economically achievable measures for the control of the addition of pollutants . . . which reflect the greatest degree of pollutant reduction achievable through the application of best available

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

nonpoint pollution control practices . . .”). *Amici* would be among the parties implementing these management measures and have an interest in ensuring that they are effective. *See* CZ_Amnd_000019 (Explaining that if the state will “use our grant funds, we will get implementation information.”).

In sum, the insubstantial, procedural errors that Plaintiff alleges were made by the Agencies in providing grant funding to Washington, the distribution of funds to a variety of environmentally beneficial programs, and the negative consequences of withholding those grants for reducing coastal nonpoint pollution, militate strongly in favor of ensuring those grant funds continue uninterrupted during the pendency of any Court remand. Accordingly, *Amici* respectfully request the Court decline to vacate the Agencies’ funding decisions if it remands to the Agencies.

## II. The Court should deny a remedial injunction as a remedy for Plaintiff’s second and third claims because Plaintiff has not demonstrated, or even argued, its entitlement at this stage.

The remedy sought by Plaintiff on its second and third claims goes beyond a request for remand to the Agencies and vacatur. Plaintiff also asks the Court to “[o]rder [the Agencies] to withhold the required portions of the . . . grant funds” until Washington submits “an approvable Coastal Nonpoint Program.” *See* Second Am. Compl. §§ VII(D), (F).[3] Granting Plaintiff’s

---

[3] In its second and third claim, Plaintiff pleads, in the alternative, that the Agencies’ grants to Washington from 2011 through 2017, and those additional grants “made during the pendency of this lawsuit,” violated the APA. *See* Second Am. Compl. ¶¶ 87, 92 (citing 5 U.S.C. § 706(2)). Curiously, Plaintiff’s prayer for relief does not appear to include any remedy that would address the alternative grounds or provide for a retroactive remedy. *See id.* §§ VII(D), (F) (seeking the Court to “[o]rder” the Agencies to withhold grant funds until a condition is met). *But see also* Pl.’s PMSJ at 24 (seeking, on partial summary judgment, the Court to enter an order, *inter alia*, “holding unlawful and setting aside the grants made to Washington from 2011 to 2017”).

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

1 request requires the Court to exercise its inherent powers in excess of the bounds of remand and

2 vacatur; instead, Plaintiff's requested remedy requires an injunction.

3      "An injunction is a drastic and extraordinary remedy, which should not be granted as a

4 matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citing

5 *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982)). If a partial or complete vacatur

6 of an agency's decision is sufficient to redress a plaintiff's injury, recourse to the additional and

7 extraordinary relief of an injunction is not warranted. *Id.* at 165–66.

8      To obtain and injunction[4] Plaintiff must demonstrate that it will likely suffer "irreparable

9 harm" should the Court decline to order withholding of future grant funding and the return of

10 those funds previously distributed. In the instant case, Plaintiff has made no such showing;

11 indeed, Plaintiff did not discuss the injunction standard in its motion and likewise failed to offer

12 any support that irreparable harm is likely. Plaintiff cannot demonstrate that failing to recoup

13 prior, and withholding future, grant funds will *likely* result in "irreparable harm." *See Natural*

14 *Resource Def. Council v. Winter*, 555 U.S. 7, 22 (2008). Any harm suffered by Plaintiff from

15 further delay in submitting, or approving, the Coastal Nonpoint Program is speculative, at best,

16 and insufficiently "particularized" to Plaintiff's interest to support the issuance of extraordinary

17 injunctive relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–

18 81 (2000) (holding that such remedies must redress an "injury to the plaintiff" rather than an

19 "injury to the environment"). Indeed, Plaintiff's sole asserted harm is the lessened coercive

20 power of CZMA to encourage timely submission of an approvable plan, which could simply be

21 addressed through imposing a reasonable deadline for submission and approval, rather than

22

23    [4] *Amici Curiae* agree with Defendants and Intervenor that Plaintiff cannot prevail on the merits of its second and third claims, so no injunction is warranted under the success on the merits factor.

24

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

cutting off funding. Equitable relief is not punitive, must be tailored to remedy the specific harm alleged, and an overbroad injunction is an abuse of discretion. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009); *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) ("An injunction should remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law.") (internal quote marks and citation omitted).

Plaintiff's harm is even less personal than the harm found insufficient in *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100 (E.D. Cal. 2013), where the plaintiff "failed to show a particularized injury to their interests rather than an abstract injury to the environment." *Id.* at 1111; *see also Pacificans for a Scenic Coast v. Cal. Dept. of Transp.*, 204 F. Supp. 3d 1075, 1093–94 (N.D. Cal. 2016) (citing *Cottonwood*, 789 F.3d at 1088–92) ("Mere violation of [ESA's] procedural requirements, without actual environmental harm, is not irreparable injury."). Because Plaintiff has not made a "clear showing" that irreparable harm is likely, the Court should deny Plaintiff's requested remedies to the extent they are more appropriately characterized as injunctive relief. *See Winter*, 555 U.S. at 22 (an injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

Finally, Plaintiff has also failed to demonstrate that the balance of harm and public interest weighs in favor of enjoining the Agencies' expenditure of funds to reduce coastal nonpoint pollution and complete the Coastal Nonpoint Program. Continued funding of programs to address nonpoint pollution benefits the public through increased awareness of the problem and improved water quality. Plaintiff has not shown that the speculative and uncertain harm of continued funding for beneficial nonpoint programs is outweighed by the tangible harm of taking back past, and withholding future, funding for the programs.

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

# CONCLUSION

For the foregoing reasons, if the Court concludes the Agencies have violated CZMA or CZARA under claims two and three, then the Court should not order future grant funding withheld or the return of prior grant funds.

Respectfully submitted this 9th day of May, 2018.

/s/ Caroline Lobdell
Caroline Lobdell, WSBA #38658

/s/ Shay S. Scott
Shay S. Scott, WSBA #23760

WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 327
Portland, Oregon 97219
Telephone: (503) 768-8500
Fax: (503) 222-3255

Attorneys for *Amici Curiae*

*AMICI CURIAE* BRIEF ON REMEDY – 15
2:16-cv-01866

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500

## **CERTIFICATE OF SERVICE**

I, Caroline Lobdell, hereby certify that I, on May 9, 2018, caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: May 9, 2018        /s/ Caroline Lobdell
                          Caroline Lobdell

Western Resources Legal Center
9220 SW Barbur Blvd., Suite 327
Portland, OR 97219
Tel: (503) 768-8500