Paul A. Kampmeier (WSBA #31560)
Emma Bruden, (OSB #163525)
   *Admitted pro hac vice, located in Oregon*
Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
Tel: (206) 223-4088 x 4
paul@kampmeierknutsen.com
emma@kampmeierknutsen.com

Allison LaPlante (OSB #023614)
   *Admitted pro hac vice*
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6894
laplante@lclark.edu

*Attorneys for Plaintiff Northwest Environmental Advocates*

The Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, an Oregon non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> THE U.S. DEPARTMENT OF COMMERCE, *et al.*, <br><br> Defendants, <br><br> and <br><br> THE STATE OF WASHINGTON, <br><br> Defendant-Intervenor. | Case No. 2:16-cv-01866-JCC <br><br> PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS TWO AND THREE <br><br> NOTED:  June 8, 2018 <br><br> ORAL ARGUMENT REQUESTED |

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................... 1

II.   ARGUMENT .................................................................................................. 3

      A.    NWEA Has Standing for the Relief Sought in Claims Two and Three ................ 3

            1.    NWEA Properly Asserts a Substantive Injury-in-Fact Under
                  Article III, and Meets the "Procedural Injury" Test. ................................ 4

            2.    NWEA Has Demonstrated Causation and Redressability
                  Under the Proper "Procedural Injury" Standard. ..................................... 9

      B.    The Statute of Limitations Does Not Bar Plaintiff's Claims. ............................. 12

      C.    This Court Must Compel NOAA and EPA to Withhold Funds
            Because CZARA Obligates the Agencies to Withhold Funds
            and the Agencies Have Failed to Do So. ............................................................ 17

            1.    NOAA's and EPA's Failures to Withhold Grant Funds
                  Constitute Agency Action "Unlawfully Withheld." .............................. 17

            2.    Alternatively, NOAA's and EPA's Failures to Withhold Grant
                  Funds Constitute Agency Action "Unreasonably Delayed." ................. 22

            3.    This Court Does Not Have to Consider Equitable or Injunctive
                  Relief Factors Before Ordering the Agencies to Withhold
                  Funds Going Forward. .......................................................................... 23

      D.    This Court Should Hold Unlawful and Set Aside the Grants Made to
            Washington From 2011 Through 2017 Because the Grants
            Violated CZARA. .............................................................................................. 26

III.  CONCLUSION ............................................................................................. 31

CERTIFICATE OF SERVICE ................................................................................ 33

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE                    i
Case No. 2:16-cv-01866-JCC

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alaska Ctr. for the Env't v. Browner*, 20 F.3d. 981 (9th Cir. 1994) ...................................... 12, 26

*Allied-Signal v. United States Nuclear Regulatory Commission,* 988 F.2d 146
    (D.C. Cir. 1993) ........................................................................................................... 27

*Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008 (9th Cir. 2007) ................................... 17

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................................... 8

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) ........................... 23, 24, 25

*Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046 (9th Cir. 2016) ...................................... 13, 15

*Cal. Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) ................................... 27

*Cancellier v. Federated Dep't Stores*, 672 F.2d 1312 (9th Cir. 1982) ....................................... 31

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ................................................... 10

*Ctr. for Envtl. Health v. Vilsack*, 2016 WL 3383954 (N.D. Cal. June 20, 2016) ....................... 27

*City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004) ....................................................... 5

*Douglas Cnty. v. Babbitt*, 48 F.3d 1495 (9th Cir. 1995) ............................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167 (2000) ...... 11, 12

*Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221 (D. Mont. 2004) ............................. 16

*Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) ............................................. 14

*Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923 (9th Cir. 2010) ....................... 14

*Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040 (9th Cir. 2010) ................................................ 27

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 07-CV-358-PK, 2007 U.S. Dist.
    LEXIS 85197 (D. Or. Nov. 16, 2007) ........................................................................... 14

*Knox v. Davis*, 260 F.3d 1009 (9th Cir. 2001) .......................................................................... 16

*La Raza Unida of S. Alameda Cnty. v. Volpe*, 488 F.2d 559 (9th Cir. 1973) ............................. 11

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE        ii
Case No. 2:16-cv-01866-JCC

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Pena*,
    2015 WL 1567444 (D. Or. April 6, 2015) ................................................ 29, 30

*Lujan v. Defenders. of Wildlife*, 504 U.S. 555 (1992) ............................................. 10

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)............................. 24, 29

*Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410
    (6th Cir. 2007)................................................................................... 12, 14, 16

*Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316
    (11th Cir. 2007)......................................................................................... 16

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ........................ 13, 14, 16

*Nat'l Solid Wastes Mgmt. Ass'n v. Ala. Dep't of Envtl. Mgmt.*,
    910 F.2d 713 (11th Cir. 1990) ....................................................................... 11

*Natural Res. Def. Council v. EPA*, 542 F.3d 1235 (9th Cir. 2008)............................ 26

*Natural Res. Def. Council v. Winter*, 555 U.S. 7 (2008) ........................................ 24

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004)........................... 18, 23, 24

*Novak v. United States*, 795 F.3d 1012 (9th Cir. 2015) ......................................... 10

*O'Donnell v. Vencor, Inc.*, 466 F.3d 1104 (9th Cir. 2006)....................................... 14

*Padres Hacia Una Vida Mejor v. Jackson*, 2012 U.S. Dist. LEXIS 49047
    (E.D. Cal. Apr. 6, 2012)...................................................................... 12, 14, 15

*Pollinator Stewardship Council v. EPA*, 806 F.3d 520 (9th Cir. 2015) ................... 27, 28

*Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008)................*passim*

*San Luis Unit Food Producers v. United States*, 709 F.3d 798 (9th Cir. 2013) .................. 17, 18

*Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77 (D.D.C. 2010) ............................... 29

*South Carolina v. United States*, 243 F. Supp. 3d 673 (D.S.C. 2017)........................ 24

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................... 4

*Telecomm. Research and Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ............................ 22

*United States v. Estate of Hage*, 810 F.3d 712 (9th Cir. 2016) ................................. 16

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

iii

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

*Vietnam Veterans of America v. CIA*, 811 F.3d 1068 (9th Cir. 2016) ................................ 1, 23, 24

*Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225 (E.D. Wash. 2010) *aff'd on other grounds sub nom. Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013) ....... 16

*Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991) ........................... 13, 15

*Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119 (E.D. Cal. 2012) ............................................................................................. 15, 16

## Statutes                                                                                    Page(s)

5 U.S.C. § 551(10)(B) ................................................................................................ 1, 17

5 U.S.C. § 551(10)(C) ................................................................................................ 1, 17

5 U.S.C. § 551(11)(A) ................................................................................................ 1, 17

5 U.S.C. § 551(13) ..................................................................................................... 1, 17

5 U.S.C. § 702 ................................................................................................................ 31

5 U.S.C. § 706(1) ............................................................................................... 1, 3, 23, 24

5 U.S.C. § 706(2) .................................................................................................. 3, 26, 27

16 U.S.C. § 1455b ............................................................................................................ 1

16 U.S.C. § 1455b(a) ....................................................................................................... 8

16 U.S.C. § 1455b(a)(1) ................................................................................................. 23

16 U.S.C. § 1455b(b) ...................................................................................................... 8

16 U.S.C. § 1455b(b)(1) ................................................................................................. 23

16 U.S.C. § 1455b(b)(2) ................................................................................................. 23

16 U.S.C. § 1455b(b)(3) ................................................................................................. 23

16 U.S.C. § 1455b(c) ....................................................................................................... 6

16 U.S.C. § 1455b(c)(3) ........................................................................................... *passim*

16 U.S.C. § 1455b(c)(3)(D) ....................................................................................... 1, 14

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

iv

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

16 U.S.C. § 1455b(c)(4)...................................................................................................*passim*

16 U.S.C. § 1455b(c)(4)(D) ......................................................................................... 1, 14

16 U.S.C. § 1455b(g) ..................................................................................................... 1, 8

16 U.S.C. § 1455b(g)(2) ...................................................................................................... 23

16 U.S.C. § 1455b(g)(5) ...................................................................................................... 23

16 U.S.C. § 1536 ..................................................................................................................... 8

16 U.S.C. § 1536(b)(3)(A) ................................................................................................... 8

16 U.S.C. §1536(b)(4) .......................................................................................................... 8

16 U.S.C. § 1540(g)(1)(C) .................................................................................................. 24

28 U.S.C. § 2401(a) .............................................................................................................. 13

PL 101-508 § 6202.......................................................................................................... 6, 8


**Other**

Fed. R. Civ. P. 54(c) ............................................................................................................ 31

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

v

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

# I.      INTRODUCTION.

Northwest Environmental Advocates ("NWEA") submits this reply brief in support of its motion for partial summary judgment on claims two and three ("Motion"). *See* Dkts. #91, 93-1. This brief addresses the response briefs of Defendants the U.S. Department of Commerce, the National Oceanic and Atmospheric Administration ("NOAA"), and the U.S. Environmental Protection Agency ("EPA") (collectively "Defendants") (Dkt. #108); of Defendant-Intervenor State of Washington ("Washington") (Dkt. #105); and of *amici curiae* Washington Cattlemen's Association and Washington State Farm Bureau Federation ("Amici") (Dkt. #104).

Nearly thirty years ago, Congress adopted the Coastal Zone Act Reauthorization Amendments of 1990, 16 U.S.C. § 1455b ("CZARA"), and directed NOAA and EPA—starting in 1996 and in "each fiscal year thereafter"—to withhold grant funds from states that failed to submit a coastal nonpoint pollution control program ("program") meeting the agencies' "Section (g) Guidance." *Id.* § 1455b(c)(3)(D), (c)(4)(D), (g). Defendants admit CZARA's withholding provisions are incentives to states to adopt sufficient programs. Dkt. #108 at 3. Defendants admit they have not complied with the statutory schedule for withholding funds. *Id.* at 5, 20. Defendants do not directly contest NWEA's assertion that the "withholding of a grant of money" and the "imposition of [a] penalty or fine" are the kinds of "agency actions" this Court can compel under Section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). *See* Dkt. #93-1 at 11–12; 5 U.S.C. § 551(13), (10)(B), (C), (11)(A). And Defendants do not address the ruling in *Vietnam Veterans of America v. CIA*, 811 F.3d 1068, 1081 (9th Cir. 2016), that a court must compel an agency to act if it finds agency action "unlawfully withheld" or "unreasonably delayed." Instead, Defendants claim they have not found that Washington failed to submit an approvable program but rather approved Washington's program with conditions and that, by doing so, they *indefinitely* deferred having to withhold funds until they publish a finding

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

1

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

that Washington failed to submit an approvable program. Dkt. #108 at 19–20.

Defendants are wrong when they assert they have not found that Washington failed to submit an approvable program. *See* CZ0005978–CZ0005992 ("1998 Findings"). The 1998 findings state: "*This document contains the findings for the coastal nonpoint pollution control program submitted by the State of Washington* pursuant to Section 6217(a) of the Coastal Zone Act Reauthorization Amendments of 1990 (CZARA)." CZ0005978 (emphasis added). The 1998 findings then state: "The structure of each finding follows a standard format. Generally, the finding is that the State program includes or does not include management measures in conformity with the [Section (g) Guidance] and includes or does not include enforceable policies and mechanisms to ensure implementation." CZ0005978. The 1998 findings then expressly find that Washington failed to submit an approvable program for ten of the twelve program components the agencies reviewed. CZ0005980–CZ0005991.

Defendants are also wrong when they suggest their current failure to withhold funds is "fully consistent with the conditional approval policy" and the 1998 findings. Dkt. #108 at 19. The conditional approval policy gave states up to five years to meet conditions without losing funding. CZ0003353–CZ0003355; CZ0006011 (timeframes for conditional approval to remain five years). The 1998 findings required Washington to meet all conditions within four years, by 2002. CZ0005978–CZ0005992. And conditional approvals expired at the end of the stated timeframes. CZ0010534 ("[T]here are also 13 states whose conditional approvals have expired and who have not yet obtained full approval of their coastal nonpoint programs."); CZ0003354–CZ0003355 (establishing 2001 as the date by which statutory penalties would apply to states without final approval); WA319_Amnd_000102 (referencing "expired conditional approvals"). Defendants misrepresent the agencies' policy and the 1998 findings when they suggest those documents authorize the agencies to defer withholding funds from Washington indefinitely.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

2

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

The conditional approval of Washington's program simply was not a finding that Washington submitted an approvable program, *see* Dkt. #39 at 11, 14, but rather a set of findings that Washington *failed* to submit an approvable program along with a limited decision to defer withholding funds from Washington during the conditional approval period. CZ0001981; CZ0006007 (states granted conditional approval "for programs that are not yet fully approvable"); CZ0003353 ("During the period of conditional approval, penalty provisions will not apply."). This Court must order Defendants to withhold funds from Washington because the record demonstrates that in 1998 the agencies found that Washington failed to submit an approvable program and there is no evidence that Defendants ever changed that finding.

Defendants' and Washington's arguments to the contrary lack merit and support in the record. So do Defendants' contentions that NWEA lacks standing, which are little more than a re-hash of the arguments this Court already rejected. Defendants' contention that the statute of limitations bars NWEA's claims is particularly puzzling because CZARA requires the agencies to withhold funds starting in 1996 and in "each fiscal year thereafter" and the agencies admit they failed to withhold funds in the six years preceding this lawsuit. Dkt. #108 at 5, 20. Because Defendants have been violating CZARA for decades, and because they clearly intend to continue doing so absent a court order compelling a change of conduct, this Court should grant NWEA summary judgment, order NOAA and EPA to withhold grant funds from Washington under 5 U.S.C. § 706(1) ("Section 706(1)"), and also, under 5 U.S.C. § 706(2) ("Section 706(2)"), hold unlawful and set aside the grants the agencies made to Washington from 2011 to 2017.

## II.          ARGUMENT.

A.    <u>NWEA Has Standing for the Relief Sought in Claims Two and Three.</u>

NWEA has standing for claims two and three, and for its requests for relief under Sections 706(1) and (2), because it has associational standing to represent its members; its

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

3

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

members have concrete injuries-in-fact; claims two and three allege procedural deficiencies; those procedures are designed to protect NWEA's members' concrete interests; and following those procedures could protect those concrete interests. *See* Dkt. #93-1 at 2–10. NOAA and EPA challenge NWEA's standing on two grounds: 1) that NWEA's injury is not properly analyzed under the Ninth Circuit's "procedural injury" standard; and 2) that NWEA fails to demonstrate causation and redressability. *See* Dkt. #108 at 7–15. Neither argument has merit. As to the first argument, NOAA and EPA confusingly cite to the concrete nature of NWEA's injuries to suggest that the "procedural injury" standard is inapt, and further argue that procedures with substantive impacts are not subject to the "procedural injury" test. But in doing so, NOAA and EPA misapply the standard for "procedural injury" and fail to meaningfully address the relevant Ninth Circuit cases about procedures with similar substantive impacts. Second, in arguing that NWEA failed to demonstrate causation and redressability, NOAA and EPA point to no "procedural injury" cases that apply the standard Defendants articulate, and fail to meaningfully rebut any of NWEA's arguments.

### 1. NWEA Properly Asserts a Substantive Injury-in-Fact Under Article III and Meets the "Procedural Injury" Test.

NOAA and EPA make several arguments to suggest that claims two and three may not be analyzed under the Ninth Circuit's inquiry for "procedural injury." None of these arguments has merit. As an initial matter, Defendants argue that NWEA may not rely on the Ninth Circuit's "procedural injury" standard because NWEA asserts "a substantive injury, not a procedural injury." *Id.* at 10. This confuses the nature of Article III standing—which always requires a concrete, substantive injury—with the Ninth Circuit's naming convention for the standing inquiry where the claim alleges a failure to follow required procedures. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 501 (2009) (Kennedy, J., concurring) (noting that "deprivation of a

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

4

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing . . . The procedural injury must impair a separate concrete interest"); *see also Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (articulating a "procedural injury" test that requires injury to "some threatened concrete interest of [plaintiff] that is the ultimate basis of his standing"). In its Motion, NWEA adopted the term "procedural injury" because that is the term used by the Ninth Circuit, *Salmon Spawning*, 545 F.3d at 1225, the parties in earlier briefing, *see* Dkt. #21 at 16, and this Court, *see* Dkt. #39 at 6. *See* Dkt. #93-1 at 3. NWEA uses that term to refer to the *test* for standing where asserting a procedural right, and not to suggest its injury-in-fact is not substantive. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) ("[F]or Article III purposes, we may recognize a 'procedural injury' when a procedural requirement has not been met, so long as the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement."). The procedures, which NWEA need assert no direct interest in, form the basis of the claim (*i.e.*, the claim is a failure to follow required procedures) because by following the required procedures, the substantive interests of NWEA "could be" protected. *Salmon Spawning*, 545 F.3d at 1226.

Claims two and three fall within this "procedural injury" rubric. NWEA's substantive injuries are its members' aesthetic, recreational, and spiritual harm from the continued degradation of Washington's coastal water quality, and the effects on aquatic species that depend on Washington's coastal waters. *See* Dkt. #93-1 at 3–4; Dkts. #27–32. NWEA's claims seek to compel NOAA and EPA to follow the procedures in CZARA for withholding a percentage of coastal and water quality grant funding from Washington. Dkt. #93-1 at 10. Following the withholding procedures puts into effect the "carrot and stick" legislative tool Congress enacted to increase the efficacy of state coastal programs. *See id.* at 8–9. Because following the withholding

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

5

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

procedures "could protect" NWEA's interests in Washington's coastal water quality and aquatic species, NWEA has standing to compel the agencies to follow these statutory procedures. *See Salmon Spawning*, 545 F.3d at 1225–26.

NOAA and EPA do not dispute that NWEA's members suffer concrete injuries, and do not apply the Ninth Circuit's analysis for claims subject to the "procedural injury" standing test. *See* Dkt. #108 at 8–10; *see also Salmon Spawning*, 545 F.3d at 1225 ("[A] plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing."). Rather, NOAA and EPA suggest that because the withholding procedures have substantive impact, the claim cannot fall within the "procedural injury" analysis. Dkt. #108 at 9–10. This argument misstates the nature of procedural claims and ignores Ninth Circuit case law that unequivocally applies the "procedural injury" test to claims where the procedure has a substantive impact. *See Salmon Spawning*, 545 F.3d at 1225–26.

Defendants argue that claims two and three are not procedural because NWEA "seeks to compel a specific outcome absent any attendant procedure[.]" Dkt. #108 at 9–10. But NWEA does not ask this Court to order its preferred specific *outcome*—restored water quality along Washington's coast and reduction of nonpoint source pollution to those waters. *See* Dkt. #27 ¶ 6. Rather, NWEA seeks an order compelling the *procedures* mandated by CZARA—withholding a portion of Coastal Zone Management Act ("CZMA") and Clean Water Act ("CWA") funding for each fiscal year in which the state does not have an approved program. *See* 16 U.S.C. § 1455b(c); Dkt. #93-1 at 10, 24 (NWEA's requested relief). In CZARA, Congress established this two-step procedure to achieve Congress' (and NWEA's) desired substantive goal—improved water quality in coastal regions through reduction of nonpoint source pollution. *See* PL 101-508 § 6202(a). Defendants suggest mandating compliance with the withholding procedures compels a

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

6

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

substantive outcome, but it compels neither the agencies' decisions about which projects to fund, nor the precise response that Washington takes to prevent coastal nonpoint source pollution. *See, e.g.*, CZ0013685, CZ0013685–CZ0013689 (NOAA exercising discretion in determining state eligibility for 2017 funding for CZMA Section 306 and Section 309, including indicating to states that funding was to be used in "support of NOAA's Strategic Priorities"); *see also* CZ0013715, CZ0013716 (Washington CZMA funding application for 2017 explaining state priorities for coastal projects).

That the withholding is a *procedure* and not a *substantive outcome* is perhaps best seen in NOAA's 2017 annual funding guidance for CZMA funds. CZ0013685. There, after applying the withholding procedures to Oregon, the agencies set the total annual funding Oregon was eligible to receive under CZMA Section 306 that resulted from NOAA's discretionary division of appropriated funds. CZ0013689. NOAA's annual funding guidance applying the withholding procedure is issued *prior* to the state's CZMA funding application, which specifies the actual coastal resource-related projects, based on NOAA's eligibility determination and the state's discretionary decisions, and *prior* to NOAA's actual award of funds. *See, e.g.*, CZ0013461 (NOAA's 2016 Funding Guidance); CZ0013492 (Washington's 2016 Funding Application); CZ0013481 (NOAA's 2016 Award to Washington). As these documents show, the withholding procedures are just that—procedures—because they are applied prior to the substantive decisions of both granting funds and of developing and carrying out projects to improve coastal water quality. The withholding procedures do not "compel" the substantive outcome but are in fact the "attendant procedure" preceding that outcome. *See* Dkt. #108 at 9–10.

Moreover, that the withholding procedures in CZARA impose a substantive impact on the state does not negate the procedural nature of the statutory provisions. The withholding procedures in CZARA are analogous to the procedural requirements of Endangered Species Act

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

7

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

("ESA") Section 7. *See* 16 U.S.C. § 1536. ESA Section 7 requires the consulting agency to prepare a biological opinion and, if the agency concludes the underlying action would jeopardize listed species, the agency must suggest "reasonable and prudent alternatives" ("RPAs"). *Id.* § 1536(b)(3)(A). Even if the agencies do not find jeopardy, the consulting agency must prepare an incidental take statement as part of its biological opinion. *Id.* § 1536(b)(4). Such procedures result in substantive impacts from which "legal consequences will flow" and which "alter the legal regime to which the action agency is subject." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). But it is precisely the substantive impacts of Section 7's procedures that protect the concrete interests of a plaintiff devoted to protecting endangered species, which forms the basis of the plaintiff's standing. *Salmon Spawning*, 545 F.3d at 1226 (citing section 7 requirements for RPAs and concluding "[t]hese procedures are designed to advance the ESA's overall goal of species preservation, and thus the groups' specific goals as to salmon preservation, by ensuring agency compliance with the ESA's substantive provisions").

CZARA is no different. Withholding funds is the procedure Congress mandated to incentivize states to enhance coastal water quality and reduce nonpoint source pollution, *see* PL 101-508 § 6202(a), the specific concrete interest NWEA asserts on behalf of its members. *See* Dkts. #27–32; Dkt. #93-1 at 3–5. Because Congress designed the withholding procedures to ensure compliance with CZARA's substantive provisions—a coastal program that fully complies with the Section (g) Guidance, 16 U.S.C. § 1455b(a)–(b), (g)—and because the substantive goal of CZARA protects NWEA's specific concrete interests in Washington's coastal water quality and species, NWEA has demonstrated an injury-in-fact under the Ninth Circuit's "procedural injury" standing test. *See Salmon Spawning*, 545 F.3d at 1226.

Finally, with respect to injury, NOAA's and EPA's arguments about judicial notice are a distraction. This Court should grant NWEA's request for judicial notice of four documents

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

8

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

published by NOAA and the Washington Department of Ecology, *see* Dkts. #92 and #93-1 at 4–

5, because NOAA and EPA do not dispute the accuracy of the reports or object to the Court

taking judicial notice of them. Dkt. #108 at 13. Instead, they incorrectly contend the documents

do not support NWEA's position and claim the documents do not bind the agencies. *Id*. But

NWEA does not claim the documents bind NOAA or EPA. *See* Dkt. #93-1 at 5 n.2. NWEA cites

the reports to demonstrate that nonpoint source pollution adversely impacts Washington's coastal

resources. *See id*. at 4–5. The reports discuss the current, on-the-ground state of coastal aquatic

species, coastal water quality, and how nonpoint source pollution harms both. *See* Dkt. #92. This

current state exists *even with* Washington's current coastal program, and *even with* the millions

of dollars NOAA and EPA give to Washington. *Id.* The reports absolutely support NWEA's

standing argument that its members' injuries are concrete. *See* Dkt. #93-1 at 4–5. They

demonstrate that the millions of dollars Defendants have been giving to Washington are not

achieving the results Congress demanded under CZARA. And they rebut Defendants'

contentions that Washington has made "great strides" in reducing nonpoint source pollution. Dkt.

#108 at 1, 21.

### 2. NWEA Has Demonstrated Causation and Redressability Under the Proper "Procedural Injury" Standard.

NOAA and EPA next argue that NWEA fails to establish causation and redressability.

Dkt. #108 at 11–13. NOAA and EPA do not address causation and redressability under the

"could protect" standard articulated by the Ninth Circuit, *see Salmon Spawning*, 545 F.3d at

1226, and do not meaningfully rebut any of NWEA's arguments or evidence. *See* Dkt. #93-1 at

8–10. But the procedural injury standing cases confirm that NWEA establishes causation and

redressability here. *See Salmon Spawning*, 545 F.3d at 1226 (for causation and redressability

"[p]laintiffs alleging procedural injury must show only that they have a procedural right that, if

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

9

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

exercised, *could* protect their concrete interests") (emphasis in original); *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001) (causation and redressability under procedural injury does not require plaintiff to "establish with any certainty" that procedures will change substantive result); *Douglas Cnty. v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir. 1995) (existing uncertainty of whether procedures, if followed, would alter the substantive outcome are "not important" in procedural injury standing).

Instead of addressing procedural injury standing cases, Defendants concede that under the "procedural injury" test causation and redressability are relaxed, *see* Dkt. #108 at 8 (citing *Salmon Spawning*), but then turn around and fault NWEA for not meeting the *traditional* test for causation and redressability. *See id.* at 11 (arguing no causation because NWEA "does not demonstrate that [the withholding procedures are] a substantial factor motivating Washington"); *id.* at 12 (arguing no redressability because NWEA did not "demonstrate that its injury would likely be redressed"). For example, Defendants cite *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015), a case dealing with causation under the traditional standing inquiry. *See* Dkt. #108 at 11. But that inquiry is irrelevant here, and this Court need not reach Defendants' arguments under the traditional standing inquiry, because NWEA has "procedural injury" standing. As with any "procedural injury" where the claim seeks to compel *procedure* and not the ultimate *outcome*, NWEA is not held to a showing that following the withholding procedures "will likely" redress its injuries for claims two and three. *See Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 572 n.7 (1992); *Cantrell*, 241 F.3d at 682; *see also* Dkt. #39 at 6–7.

Furthermore, NOAA and EPA do not point to any "procedural injury" case requiring proof that the procedures are a "substantial motivating factor" in the underlying action or that following procedures "would likely" change the underlying action. Similarly, while NOAA and EPA charge that NWEA's causation and redressability arguments are "tenuous," the agencies do

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

10

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

not offer any case law contesting the many cases finding that congressional use of monetary

incentives and deterrents is a valid means to further a substantive purpose. *See Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 186 (2000) (acknowledging

congressional purpose to establish monetary penalty as deterrent to environmental harm); *La*

*Raza Unida of S. Alameda Cnty. v. Volpe*, 488 F.2d 559, 562 (9th Cir. 1973) (recognizing that

statutory purpose cannot be met unless both the incentive and penalty of Congress' scheme are

carried out); *see also* Dkt. #93-1 at 8. Indeed, NOAA and EPA *admit* Congress utilized this

incentive and deterrent mechanism in CZARA. *See* Dkt. #108 at 3 (conceding that "Congress

structured funding incentives into CZARA to encourage state development of [coastal plans]").

And they fail to offer any compelling record evidence suggesting that withholding funds *could*

*not* be effective to incentivize Washington.

　　　　In fact the evidence is to the contrary. *See* CZ0009066 (EPA and NOAA letter to

Washington citing upcoming expiration of agencies' conditional approval policy and imposition

of withholding procedures in encouraging Washington to complete needed improvements to its

coastal plan); CZ0012472, CZ0012472–73 (EPA and NOAA letter to Washington indicating that

in response to Treaty Rights at Risk, the federal agencies will be "[c]onditioning [] federal

nonpoint source pollution and Puget Sound grant monies" on meeting federal standards);

CZ0011354, CZ0011358 (NOAA's Section 312 Guidance Manual, explaining that as outcomes

of NOAA's evaluation of the state program, findings can include "necessary action[s]" which if

not taken by the state lead to the "sanction" of "the suspension and redirection of funds" under

CZMA Section 312). The record shows EPA and NOAA concede the link between the

withholding procedures and substantive improvement to Washington's coastal plan. And as

courts have recognized, where *credibly* employed, fiscal deterrents work. *Nat'l Solid Wastes*

*Mgmt. Ass'n v. Ala. Dep't of Envtl. Mgmt.*, 910 F.2d 713, 721 n.11 (11th Cir. 1990) (noting

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

11

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

1   "sanction [of] withholding funds for remedial cleanups of Superfund sites" was "effective"); *see*

2   *also Laidlaw*, 528 U.S. at 186 ("[A] threat has no deterrent value unless it is credible that it will

3   be carried out.").

4       The withholding procedures in CZARA are part of Congress' design to substantively

5   improve coastal water quality and the aquatic species that depend on such water, and to deter the

6   inadequate efforts that were not sufficiently protecting coastal resources. PL 101-508 §

7   6202(a)(1), (6). The Congressional remedy to the problem of inadequate state programs provides

8   a presumption of adequate redress to a plaintiff like NWEA suffering injury from degraded

9   coastal resources. *See Alaska Ctr. for the Env't v. Browner*, 20 F.3d. 981, 984 (9th Cir. 1994);

10  *see also Laidlaw*, 528 U.S. at 185. Because these procedures "could protect" NWEA's interest in

11  Washington's coastal resources, NWEA has standing to compel the agencies to follow CZARA's

12  mandatory procedures. *See Salmon Spawning*, 545 F.3d at 1226.

13

14

15  B.      The Statute of Limitations Does Not Bar Plaintiff's Claims.

16       Defendants also incorrectly assert the statute of limitations bars NWEA's second and

17  third claims. *See* Dkt. #108 at 15–17. NWEA's claims are timely under 28 U.S.C. § 2401(a) for

18  two reasons. First, NWEA's request for relief under Section 706(1) is timely because

19  Defendants' failures to withhold funds constitute a series of "discrete violations" that continue to

20  this day such that a new statute of limitations period starts with each violation. *See Padres Hacia*

21  *Una Vida Mejor v. Jackson*, No. 1:11-CV-1094 AWI DLB, 2012 U.S. Dist. LEXIS 49047, at

22  *29–30 (E.D. Cal. Apr. 6, 2012); *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d

23  410, 417–19 (6th Cir. 2007). Second, NWEA's request for relief under Section 706(2) is timely

24  because NWEA challenges grants Defendants made from 2011 to 2017, those grants are final

25  agency actions, and NWEA asserted its challenge to those grants within the six-year statute of

26

27

28

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

12

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

limitations period for each grant. *See Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046 (9th Cir. 2016). Defendants' arguments to the contrary are all unavailing.

As an initial matter, Defendants are wrong when they contend NWEA is challenging the conditional approval policy or Washington's conditional approval. Dkt. #108 at 15–17. NWEA challenges Defendants' failures to withhold grant funds from Washington and Defendants' recent grants to Washington. *See* Dkt. #74 ¶¶ 83–92. There is no reason to challenge the conditional approval policy or Washington's conditional approval because neither justifies Defendants' failure to withhold funds after 2002. Defendants' conditional approval policy deferred the withholding of funds for up to five years. CZ0003353–CZ0003355; CZ0006011; *see also* CZ0005978–CZ0005992. After four years the conditional approval expired and obligated the agencies to begin withholding funds from Washington. CZ0010534; CZ0003354–0003355; WA319_Amnd_000102. NWEA is not challenging the agencies' policy or Washington's conditional approval because neither authorizes the agencies' current failure to withhold funds.

The claims NWEA *has* stated are timely. NWEA agrees a six-year statute of limitations applies to APA claims. 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712–13 (9th Cir. 1991); *Cal. Sea Urchin Comm'n*, 828 F.3d at 1049–52 (plaintiff must bring APA claim "within six years of the agency action that is challenged"). But the fact that Defendants' illegal conduct goes back decades does not bar NWEA from obtaining relief under Sections 706(1) or 706(2).

Defendants claim NWEA cannot obtain relief under Section 706(1) because the claims first accrued in 2002. *See* Dkt. #108 at 16–17. But under the "discrete violations" doctrine, where a statute imposes ongoing obligations, a defendant is liable for all discrete violations occurring within the limitations period and similar violations occurring outside the limitations period do not bar a plaintiff's claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–114 (2002)

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

13

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

(each act "starts a new clock for filing charges," and the existence of past acts does not bar suit); *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006) (each act is a separate violation with a cause of action accruing); *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968). Courts apply this doctrine to "failure to act" claims when there is an ongoing duty to perform a discrete agency act coupled with inaction by the federal agency. *See, e.g.*, *Padres Hacia Una Vida Mejor*, 2012 U.S. Dist. LEXIS 49047, at *28–29; *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 07-CV-358-PK, 2007 U.S. Dist. LEXIS 85197, at *15–17 (D. Or. Nov. 16, 2007); *see also Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010) (suggesting statute of limitations may not have barred Section 706(1) claim) (citation omitted).

Here, Defendants have failed to withhold funds since 1998, *including during the six years preceding this lawsuit*, and those failures constitute a series of discrete violations of CZARA's continual duty to withhold funds for which this Court can grant relief under Section 706(1). CZARA requires NOAA and EPA to withhold funds from Washington "for each fiscal year" until the state submits an approvable program. 16 U.S.C. § 1455b(c)(3), (4); *id.* § 1455b(c)(3)(D), (4)(D). Thus, CZARA unambiguously places Defendants under an ongoing obligation to withhold funds each year until Washington submits an approvable program. And Defendants have repeatedly violated that obligation each year they have not withheld funds, including during the six years preceding this lawsuit. NWEA's Section 706(1) claims are timely because a new clock starts for those claims each year Defendants fail to withhold funds. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113; *see also Padres Hacia Una Vida Mejor*, 2012 U.S. Dist. LEXIS 49047, at *29–30; *Nat'l Parks Conservation Ass'n*, 480 F.3d at 418–19.

Defendants are also wrong when they assert NWEA cannot challenge the 2011–2017 grants under Section 706(2) because those grants merely reflect the conditional approval policy

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

14

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

and so NWEA needed to bring its challenge by 2004 at the latest. Dkt. #108 at 17, 19. The Ninth

Circuit has repeatedly held that a final agency action has its own statute of limitations period

even if the decision applies an earlier rule or policy that allegedly exceeds the agency's statutory

authority. *See Cal. Sea Urchin Comm'n*, 828 F.3d at 1049–52; *Wind River Mining Corp.*, 946

F.2d at 716. An agency "may well defend its [action] as a straightforward application of [an

earlier rule], but that application [i]s nonetheless a final agency action, with its own limitations

period." *Cal. Sea Urchin Comm'n*, 828 F.3d at 1051. Defendants do not dispute NWEA's

contention that each grant is a final agency action subject to judicial review under the APA. *See*

Dkt. #93-1 at 22; *see generally* Dkt. #108. Thus, even if the grants reflected the conditional

approval policy, NWEA's challenge to the grants is timely because the grants are individual final

agency actions and NWEA challenged the grants within each grant's statute of limitations

period. *Cal. Sea Urchin Comm'n*, 828 F.3d at 1049–52.

Defendants do not address the discrete violations doctrine under Section 706(1) or Ninth

Circuit case law regarding final agency actions under Section 706(2), but instead make several

flawed arguments that the statute of limitations applies here. Dkt. #108 at 16–17. First,

Defendants assert that a claim accrues when a plaintiff comes into possession of the critical facts

related to its injury. *See id.* at 16 (citing two cases). NWEA does not dispute that general

principle, but the more relevant principle is that for APA claims a plaintiff comes into possession

of the critical facts upon "final agency action" or a failure to act. *See Cal. Sea Urchin Comm'n*,

828 F.3d at 1049; *Padres Hacia Una Vida Mejor*, 2012 U.S. Dist. LEXIS 49047, at *28–29. And

here, all the actions and inactions NWEA challenges occurred within the limitations period.

Defendants next cite two cases to support their assertion that NWEA was "on notice" of

Defendants' conduct for more than six years so NWEA's claims are time-barred. Dkt. #108 at 17

(citing *Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119, 1137 (E.D. Cal.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

15

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

2012) and *Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225, 1233–37 (E.D. Wash. 2010), *aff'd on other grounds sub nom. Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013) (statute of limitations not discussed on appeal)). Although both cases involve Section 706(1) claims, both are irrelevant because they do not squarely address the discrete violations doctrine. In *Winnemem Wintu Tribe*, the plaintiff challenged agency inaction that occurred more than six years before the lawsuit and made no argument that inaction occurred within the limitations period. 725 F. Supp. 2d at 1137 n.9. In *Wild Fish Conservancy*, the court conflated the "continuing violation" doctrine with the "discrete violations" doctrine, but ultimately only ruled under the continuing violation doctrine because it found the inaction was a one-time violation occurring outside the limitations period. 688 F. Supp. 2d at 1236–37. Both cases are inapplicable here because CZARA requires Defendants to withhold funds annually, *see* 16 U.S.C. § 1455b(c)(3)–(4), and Defendants have repeatedly failed to do so within the limitations period. NWEA's Section 706(1) claims are timely because they accrue each year Defendants fail to withhold funds. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

Finally, Defendants argue the continuing violation doctrine does not apply to NWEA's claims. Dkt. #108 at 17 (citing *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221, 1229 n.3 (D. Mont. 2004), *aff'd*, 469 F.3d 108 (9th Cir. 2006) and *United States v. Estate of Hage*, 810 F.3d 712, 721 (9th Cir. 2016)). The continuing violation doctrine, which allows a plaintiff to obtain relief for conduct occurring outside the limitations period, is separate from—though frequently conflated with—the discrete violations doctrine. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001); *compare Nat'l Parks Conservation Ass'n, Inc.*, 480 F.3d at 416 (finding a series of violations based on a statutory obligation, some occurring within the limitations period, and applying the discrete violations doctrine), *with Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322–26 (11th Cir. 2007) (finding a single violation based on a

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

16

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

statutory obligation and rejecting the continuing violation doctrine). *Gros Ventre Tribe* and

*Estate of Hage* do not support a ruling that the statute of limitations bars NWEA's request for

relief under Section 706(1), however, because both cases involved Section 706(2) claims, not

706(1) claims. And those cases are irrelevant to NWEA's request for relief under Section 706(2)

because NWEA challenges grants made during the statute of limitations period and so does not

need the continuing violation doctrine to obtain relief. *See* Dkt. #74 at 29–30.

C.    This Court Must Compel NOAA and EPA to Withhold Funds Because CZARA
      Obligates the Agencies to Withhold Funds and the Agencies Have Failed to Do So.

Defendants and Washington fail entirely to respond to the main authorities NWEA cited

in support of its request for relief under Section 706(1)—the APA definitions, *Norton*, and

*Vietnam Veterans of America*. *See* Dkt. #93-1 at 10–13. But those authorities control here and

confirm NWEA is seeking to compel "discrete agency action"—the withholding of a grant of

money or the imposition of a penalty or fine, *see* 5 U.S.C. § 551(13), (10)(B), (C), (11)(A)—that

NOAA and EPA are required to take. Defendants and Washington also fail to directly address

NWEA's contention that the 1998 conditional approval of Washington's program was a set of

findings that Washington failed to submit an approvable program along with a limited decision

to defer withholding funds during the conditional approval period—until 2002. The defenses

they offer instead are without merit.

      1.    NOAA's and EPA's Failures to Withhold Grant Funds Constitute Agency
            Action "Unlawfully Withheld."

Defendants are wrong when they contend NWEA is not seeking to compel "discrete

agency action" but is instead leveling an impermissible programmatic attack on the agencies'

implementation of CZARA. Dkt. #108 at 17–18 (citing *Alvarado v. Table Mountain Rancheria*,

509 F.3d 1008, 1019–20 (9th Cir. 2007) and *San Luis Unit Food Producers v. United States*, 709

F.3d 798, 803 (9th Cir. 2013)). In *San Luis Unit Food Producers*, the court distinguished cases

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

17

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

1   seeking to compel "discrete agency action" from cases alleging impermissible "broad

2   programmatic attack[s] on an agency's administration of a program." 709 F.3d at 803 (citing

3   *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)); *id.* at 808. And in both *Alvarado*

4   and *San Luis Unit Food Producers*, the court of appeals affirmed dismissal of Section 706(1)

5   claims because the appellants had not provided *any* statutory authority requiring the federal

6   defendants to do what the appellants sought. *Alvarado*, 509 F.3d at 1020; *San Luis Unit Food*

7   *Producers*, 709 F.3d at 803–808.

8

9          This case is clearly different from *Alvarado* and *San Luis Unit Food Producers* because

10  NWEA seeks to compel compliance with specific statutory sections that require NOAA and EPA

11  to withhold grant funds under certain conditions. *See* Dkt. #74 at 28–29, 33 (citing 16 U.S.C. §

12  1455b(c)(3), (4)). That NOAA and EPA may be failing to withhold funds from other states, or

13  that they may have been violating CZARA's withholding provisions for years, does not convert

14  NWEA's claims into a programmatic challenge because NWEA seeks to compel compliance

15  with specific statutory sections that set forth specific actions the agencies must take where, as

16  here, the agencies have found that a state failed to submit an approvable program. *Id.*; 16 U.S.C.

17  § 1455b(c)(3), (4); *see also San Luis Unit Food Producers*, 709 F.3d at 803–08.

18

19         NWEA is not challenging the agencies' "1993 interpretation and implementation of

20  CZARA" or the agencies' "1998 approval with conditions of Washington's program," as

21  Defendants contend. Dkt. #108 at 17; *see* Dkt. #74 at 28–29, 33. There is no reason for such a

22  challenge because neither the conditional approval policy nor the 1998 findings *ever* authorized

23  NOAA or EPA to defer withholding grant funds indefinitely. *See supra* at 2–3, 13; Dkt. #93-1 at

24  14–16; CZ0003353–CZ0003355; CZ0006011 (timeframes for conditional approval to remain

25  five years); CZ0005978–CZ0005992 (requiring Washington to meet conditions by 2002);

26  CZ0010534; CZ0003354–CZ0003355 (penalties to be imposed starting in 2001);

27

28

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

18

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

WA319_Amnd_000102 (referencing "expired conditional approvals"). There simply is no "interpretation of the statute" that has been in place since 1993 or 1998 that justifies the agencies' current failure to withhold funds, as Defendants contend. *See* Dkt. #108 at 2, 4, 15–16.

Defendants are also wrong when they contend CZARA does not obligate the agencies to withhold funds from Washington because the agencies have not found that Washington failed to submit an approvable program but rather approved Washington's program with conditions as per the agencies' policy. Dkt. #108 at 19–20; *see also* Dkt. #105 at 2 ("Plaintiff has failed to identify any finding . . ."). As NWEA explained in its Motion, the agencies found in 1998 that Washington failed to submit an approvable program. Dkt. #93-1 at 13–17; CZ0005978–CZ0005992. The 1998 findings plainly state that it contains the agencies' findings, *see* CZ0005978 ("This document contains the findings . . . ."), and then plainly find that Washington failed to submit a program meeting the agencies' "Section (g) Guidance"—*i.e.*, that Washington failed to submit an approvable program. Dkt. #93-1 at 14–15 (citing CZ0005978–CZ0005992). Defendants misunderstand the legal ramifications of the agencies' 1998 findings, but there is no evidence in the record or anywhere else that changes the fact that in 1998 the agencies found that Washington failed to submit an approvable program. CZ0005978–CZ0005992.

Defendants largely ignore the 1998 findings and instead rely on the conditional approval policy, as well as evidence from 2003 and 2012, to support their contention that the agencies have not found that Washington failed to submit an approvable program. Defendants first take issue with NWEA's contention that the "conditional approval" of Washington's program demonstrates the agencies found that Washington failed to submit an approvable program because conditional approvals only applied to states with deficient programs. Dkt. #108 at 19; *see also* Dkt. #93-1 at 14–16. But Defendants do not cite *any* text in their policy or any evidence in the record that rebuts NWEA's contention. Dkt. #108 at 19. Nor can they; the agencies' policy

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

19

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

plainly states: "in recognition of the complexity of the program, *States could be granted conditional approval for programs that are not yet fully approvable, thereby affording more time for States to fully develop their programs*." CZ0005514 (emphasis added); *see also* Dkt. #93-1 at 14, 16 (citing conditional approval policy documents). That is precisely what happened here; the conditional approval of Washington's program was not an approval of that program but rather a finding that the program was deficient and a limited decision to defer withholding funds for four years so Washington could meet the Section (g) Guidance. *See* CZ0005978–CZ0005992.

Defendants also cite record evidence from 2012 to support their contention that "the Agencies *expressly did not find* that Washington failed to submit an approvable program." Dkt. #108 at 19 (emphasis in original) (citing CZ0012361, CZ0012351, CZ0012383–421). But that evidence is not the best evidence of what the agencies did in 1998 because it is from 2012. *Id.* To the extent the 2012 documents bear on what the agencies did in 1998, they prove two things. First, by purporting to explain how Washington improved its program to meet conditions imposed on it in 1998, the 2012 documents demonstrate the agencies found in 1998 that Washington failed to submit an approvable program. *See* CZ0012361–CZ0012382 ("Washington Proposed Decision Document" purporting to explain program improvements since 1998 findings). Second, by documenting that Defendants proposed a final approval of Washington's program and then retreated from that position after receiving comments detailing the need to strengthen the program to protect water quality and aquatic species, the 2012 documents demonstrate that either NOAA or EPA found that Washington still did not have an approvable program as of 2012. CZ0012351, CZ0012383–421; *see also* Dkt. #108 at 5 (citing CZ0012472).

Defendants also cite a 2003 memorandum, which sets forth a process for approving or disapproving a state program, to suggest that because the agencies have not gone through that process since 2003 they have not found that Washington failed to submit an approvable program.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

20

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

Dkt. #108 at 19 (citing CZ0010534). But the fact that the agencies have not gone through some process since 2003 does not undermine the findings the agencies made in 1998 after public notice and comment; quite the contrary, it demonstrates that Washington continues to maintain a program that EPA and NOAA will not approve. CZ0010534; *see also* CZ0005978–CZ0005992; CZ0002008; WA319_003981; CZ0009768–CZ0009769; CZ0012473; CZ0012469. All the evidence Defendants cite supports NWEA's contention that NOAA and EPA found in 1998 that Washington failed to submit an approvable program.

That same evidence also rebuts Washington's contentions that it has submitted an approvable program. Dkt. #105 at 1–6. Washington admits "the federal agencies have not approved Washington's Coastal Nonpoint Pollution Control Program." *Id*. at 3. And the 2012 proposed decision that Washington relies upon was just that—an unsigned, proposed decision that Washington concedes the agencies did not finalize, send out for public comment, or publish in the Federal Register as required. *Id.* at 2 (citing CZ0012361 and CZ0012400 (entitled "Washington *Proposed* Decision Document" (emphasis added)); CZ0012469; CZ0010534–CZ0010536. The 2012 proposed decision is simply not a determination that Washington submitted an approvable program, as Washington contends. *See* Dkt. #105 at 3–6. The two other letters Washington discusses, and Washington's continued efforts to improve its program, similarly corroborate rather than undermine NWEA's allegations. Dkt. #105 at 4.

This Court should reject Washington's invitation to rule that it has submitted an approvable program or to set that issue for trial. *See id.* at 1, 6. First, whether Washington has an approvable program is not at issue in this case because NWEA has not challenged any final approval of Washington's program. Instead, at issue here is whether the 1998 findings obligate NOAA and EPA to withhold funds from Washington, an issue this Court can resolve based on the administrative record. Second, such a ruling would impermissibly intrude on the agencies'

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

21

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

roles—*see* Dkt. #108 at 22 lines 15–18—and subvert NWEA's opportunity to comment on any proposal to approve Washington's program.

### 2. Alternatively, NOAA's and EPA's Failures to Withhold Grant Funds Constitute Agency Action "Unreasonably Delayed."

Defendants' "unreasonable delay" arguments miss the mark almost entirely because they mostly address claim one, which this Court dismissed, not claims two and three, which are at issue in the Motion. NWEA's claim one alleged NOAA and EPA had unlawfully withheld or unreasonably delayed making a final decision approving or disapproving Washington's program. Dkt. #18 at 27. This Court dismissed that claim. Dkt. #39 at 9–10. Notwithstanding that, Defendants contend the agencies have not unreasonably delayed deciding whether Washington failed to submit an approvable program. Dkt. #108 at 20–21. This argument is irrelevant because it addresses claim one rather than claims two and three.

Defendants' unreasonable delay arguments are also meritless as to claims two and three. Factors one and two under *Telecomm. Research and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")—the time agencies take to make decisions must be governed by a rule of reason and the statute can provide the content for that—support a finding of unreasonable delay because Defendants admit that NOAA and EPA have not followed the timetable for withholding funds that Congress included in CZARA. Dkt. #108 at 20; 16 U.S.C. § 1455b(c)(3), (4). Defendants are also wrong when they contend the delay has been consistent with the conditional approval policy. Dkt. #108 at 21. As previously explained, the conditional approval policy only deferred the withholding of grant funds for up to five years after conditional approval. CZ0003353–CZ0003355; CZ0006011. And the agencies gave Washington only four years after conditional approval—until 2002—to meet all conditions before the agencies would begin withholding funds. CZ0005978–CZ0005992. By failing to withhold funds since 2002

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

22

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

Defendants have not only violated the schedules for withholding that Congress included in CZARA, they have also violated the agencies' conditional approval policy.

Defendants are also wrong when they contend the agencies acted reasonably by providing Washington with full funding over the years to develop its program and implement projects to curb nonpoint source pollution. Dkt. #108 at 21. Congress adopted CZARA to encourage coastal states to regulate land uses to eliminate nonpoint source pollution. 16 U.S.C. § 1455b(a)(1), (b)(1)–(3), (g)(2), (g)(5). Allowing Washington to leave in place land use practices that degrade water quality and aquatic habitats across the state's coastal areas, while funding local projects to fix the problems those land uses cause, does not advance the purposes of CZARA or comply with the statute. Quite the contrary, it subverts the statute and moves money to the state without ever changing the underlying land use practices that Congress sought to fix through CZARA.

Defendants ignore the arguments NWEA made under *TRAC* factors three (human health and welfare are at stake), four (ordering withholdings will not undermine other agency activities), and five (prejudice to NWEA's interests in clean water and healthy aquatic species). Dkt. #93-1 at 20–21; Dkt. #108 at 20–22. Defendants also ignore the many cases NWEA cited that establish that the delays at issue here are unreasonable. Dkt. #93-1 at 21; Dkt. #108 at 20–22. If the agencies have not "unlawfully withheld" agency action, this Court should find "unreasonable delay" and order the agencies to begin withholding funds immediately. 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 62; *Vietnam Veterans of Am.*, 811 F.3d at 1081.

### 3. This Court Does Not Have to Consider Equitable or Injunctive Relief Factors Before Ordering the Agencies to Withhold Funds Going Forward.

Defendants contend this Court "is not obligated to issue injunctive relief" if it finds a violation of Section 706(1) because "equitable principles apply." Dkt. #108 at 22 (citing *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002)). Making arguments

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

23

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

Defendants do not make, Amici then contend this Court cannot issue an injunction because NWEA has not met the standards in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) and *Natural Resource Defense Council v. Winter*, 555 U.S. 7 (2008), and Washington contends "the balance of harms does not support Plaintiff's requested injunctive relief." Dkt. #104 at 12–14; Dkt. #105 at 10.

All of those arguments fail because they completely ignore, and cannot be reconciled with, the plain language of Section 706(1) and the U.S. Supreme Court and Ninth Circuit precedent interpreting that statute to mean that a court must order an agency to act if it finds action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1) ("The reviewing court shall [] compel . . . ."); *Norton*, 542 U.S. at 64; *Vietnam Veterans of Am.*, 811 F.3d at 1081. "The word 'shall' requires a court to compel agency action when, as here, there is a 'specific, unequivocal command' that the agency must act." *Vietnam Veterans of Am.*, 811 F.3d at 1081 (citing 5 U.S.C. § 706(1) and *Norton*, 542 U.S. at 63–64); *see also South Carolina v. United States*, 243 F. Supp. 3d 673, 688–95 (D.S.C. 2017) (rejecting argument that 5 U.S.C. § 702 authorizes courts to deny Section 706(1) relief). Accordingly, this Court must order the agencies to withhold funds going forward if it finds Defendants have unlawfully withheld or unreasonably delayed action under 16 U.S.C. § 1455b(c)(3) and (4).

Defendants have not cited any case decided under Section 706(1) that contradicts or undermines *Norton* or *Vietnam Veterans of America*. *Badgley* does not control here because that court decided an ESA citizen suit claim under 16 U.S.C. § 1540(g)(1)(C), not an APA claim under Section 706(1). *See Badgley*, 309 F.3d at 1176. Although both kinds of claims seek to compel agency action, that difference is crucial because the ESA *authorizes* federal courts to order agencies to act but it does not appear to *obligate* the courts to do so, as Section 706(1) does. *Compare* 16 U.S.C. § 1540(g)(1)(C) *with* 5 U.S.C. § 706(1). Moreover, notwithstanding

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

24

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

the court's reflection on equitable principles, the court ultimately concluded it had no discretion to consider those principles because the agency failed to meet a statutory deadline. *Badgley*, 309 F.3d at 1177–78. *Badgley* does not undermine the plain language of Section 706(1), *Norton*, or *Vietnam Veterans of America*; nor do Defendants' other cases, most of which resolved Section 706(2) claims and all of which, like *Badgley*, precede *Norton* and *Vietnam Veterans of America*. *See* Dkt. #108 at 22–23 (citing three cases). *Vietnam Veterans of America* controls here because it is more recent than Defendants' cases and because the court decided a Section 706(1) claim.

Amici's cases are similarly inapt because none was decided under Section 706(1) and none holds or even suggests that *Norton* or *Vietnam Veterans of America* is incorrect. NWEA does not need to meet the standards set forth in *Monsanto* and *Winter* to obtain an order compelling Defendants to withhold funds from Washington, as contended. But even if those cases and standards did apply, NWEA's standing declarations and the other evidence of injury demonstrate that NWEA and its members will suffer irreparable harm if the agencies continue to grant full funding to Washington in violation of CZARA. *See* Dkts. #27–32; Dkt. #93-1 at 2–8.

As to Washington's argument concerning balancing of harms, even if this Court considers the balance of harms in deciding whether to issue an order under Section 706(1), the harms tip in NWEA's favor. Washington asserts that harm may result from reduced grant funding and particularly asserts that people will lose their jobs if this Court rules for NWEA. Dkt. #105 at 10 (citing Lynn Declaration (Dkt. #106) at ¶ 7). But paragraph seven of the Lynn Declaration is unpersuasive because Mr. Lynn does not lay the foundation for his conclusions or address the possibility that the state will appropriate funds to maintain those jobs.

Washington's arguments utterly ignore the significant environmental benefits that should result from the withholding of grants and the subsequent adoption of an approvable program. 16 U.S.C. § 1455b(c)(3)–(4). Washington claims it uses grants to fund restoration projects to

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

25

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

remedy nonpoint source pollution. *See* Dkt. #107 ¶¶ 5–11. But it is doing so while making little

progress in developing a program to prevent the ultimate causes of nonpoint source pollution

before it enters the environment. Congress adopted a different approach, however; Congress

chose to sacrifice some of the short-term and local gains generated by full funding in favor of the

longer-term and wider-spread gains created through an approvable program. That determination

tips any balancing of harms in NWEA's favor. *Natural Res. Def. Council v. EPA*, 542 F.3d 1235,

1248 (9th Cir. 2008); *Alaska Ctr. for the Env't*, 20 F.3d at 984 ("Congress has determined that

the relief plaintiffs seek is the appropriate means of achieving desired water quality where other

methods, including non-point source controls, have failed.").

Finally, this Court should deny Amici's and Washington's suggested alternative relief.

Amici and Washington ask this Court to remand to the agencies with a deadline to review and

approve Washington's program if it finds violations of CZARA. Dkt. #105 at 10–11; Dkt. #104

at 13; *see also* Dkt. #108 at 22 (requesting remand of the conditional approval). A remand is not

a remedy under Section 706(1) and it makes no sense where, as here, there has been a failure to

act. That relief is simply not a substitute for an order under Section 706(1) and would, in fact,

contravene Section 706(1), *Norton*, and *Vietnam Veterans of America*.

D.      This Court Should Hold Unlawful and Set Aside the Grants Made to Washington From
        2011 Through 2017 Because the Grants Violated CZARA.

This Court should also hold unlawful and set aside the grants NOAA and EPA made to

Washington from 2011 to 2017. *See* 5 U.S.C. § 706(2). NOAA and EPA admit they have not

withheld the portions of the grant funds required by CZARA. *See, e.g.*, Dkt. #108 at 5. Under

Section 706(2), this Court should therefore issue an order declaring unlawful the grants NOAA

and EPA made to Washington from 2011 to 2017 because doing so would not only invalidate

those grants but also deter NOAA and EPA from unlawful conduct. *See* Dkt. #93-1 at 10.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

26

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This Court should also partially vacate the agencies' grants from 2011 to 2017. NOAA and EPA argue that a remand to the agencies is the only appropriate and "well-settled" remedy in this situation. *Id*. at 22. In doing so, the agencies ignore a substantial body of case law and the APA itself. Under the APA, vacatur is the presumptive remedy for an unlawful agency action. 5 U.S.C. § 706(2) ("The reviewing court *shall . . .* set aside agency action" found unlawful) (emphasis added); *see also Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (courts remand without vacatur only in "limited circumstances."); *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) (noting that vacatur is required except in "rare circumstances"). Although a court may decline to vacate an unlawful action "when equity demands," *Pollinator*, 806 F.3d at 532, the burden to show such equity exists rests with the defendants. *See Ctr. for Envtl. Health v. Vilsack*, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("[G]iven that vacatur is the presumptive remedy for a procedural violation such as this, it is Defendants' burden to show that vacatur is unwarranted."). Here, NOAA and EPA fail to acknowledge *they* have the burden, much less *meet* the burden, to show vacatur is unwarranted.

This Court should order partial vacatur under the two-part balancing test set forth in *California Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012). First, NOAA's and EPA's violations are "serious." *See California Communities*, 688 F.3d at 992. The D.C. Circuit in *Allied-Signal v. United States Nuclear Regulatory Commission*, on which the Ninth Circuit relied in *California Communities*, described the seriousness prong as "the extent of doubt whether the agency chose correctly." 988 F.2d 146, 150 (D.C. Cir. 1993) (finding "at least a serious possibility" that the agency would be able to justify its position on remand). Here, there is no doubt that the agencies chose incorrectly. For years, NOAA and EPA have violated the withholding procedures of CZARA, which go to the heart of the statutory scheme. Though the violations are procedural, this makes them no less serious. *See* Dkt #93-1 at 23–24 (citing cases

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

27

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

vacating decisions based on procedural violations). NOAA's and EPA's only defense on this front is that any error was mitigated by Washington's strengthening of its program to meet approval conditions. Dkt. #108 at 23–24. NOAA and EPA go on to suggest that their actions have "resulted in the reduction of nonpoint source pollution." *Id.* at 24. But the agencies cite no evidence that even remotely backs up these claims. *Id.* at 23–24. In the factual background section of the NOAA's and EPA's brief, they cite to a 2013 letter (CZ0012472) they claim supports the conclusion that Washington has committed to a process to implement best management practices that will include protections for salmon. *Id.* at 5. That letter, however, does little more than confirm NWEA's allegations: fish populations continue to decline, water quality is poor, habitat protection and restoration efforts in Puget Sound are behind schedule, and NOAA and EPA "are not prepared to approve Washington's CNPCP." CZ0012472–CZ0012473. That letter provides absolutely no support for the assertion that Washington has somehow mitigated the seriousness of the agencies' violations.

Amici also argue that NOAA's and EPA's errors are "relatively minor." Dkt. #104 at 6. But Amici cite no evidence to support that conclusion and they ignore the applicable test for determining whether an agency violation is serious. In *Pollinator Stewardship Council*, the Ninth Circuit explained that courts should look to "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." 806 F.3d at 532. Here, NOAA's and EPA's decisions were fundamentally flawed and the agencies could not make the same decisions on remand because Washington does not have an approvable program. NOAA and EPA have unlawfully granted the State of Washington millions of dollars, in clear contradiction of CZARA's requirements, and it has resulted in deficient controls of coastal nonpoint source pollution in the

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

28

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

1    state. This is the opposite of the result Congress sought to achieve through CZARA.

2         To the extent Amici suggest NOAA and EPA would likely make the same decisions after

3    these claims have been resolved in NWEA's favor (*see* Dkt. #104 at 9), they provide no basis for

4    that assertion. To NWEA's knowledge the only other similar CZARA suit brought in the country

5    was the one NWEA brought against NOAA and EPA in Oregon. That case settled, but the

6    agencies, when forced through their settlement obligations to meet the statutory requirements,

7    determined that Oregon had not submitted an approvable program and began withholding

8    funding from Oregon. *See* Dkt. #108 at 25. It is thus far from clear why Amici believe that

9    NOAA and EPA are certain to make the same decisions again after guidance from this Court.

10        Second, any "disruptive consequences" from vacatur do not warrant leaving the agency

11   decisions in place. As an initial matter, NWEA seeks to clarify what vacatur means in this

12   context. In light of the declarations Washington has submitted, NWEA seeks only partial vacatur

13   of the agencies' grant decisions. *See, e.g.*, *Monsanto*, 561 U.S. at 165–66 (recognizing remedy of

14   "partial vacatur"); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78–80 (D.D.C. 2010) ("The

15   Court finds that the appropriate remedy is remand along with a partial vacatur."); *League of

16   Wilderness Defenders/Blue Mountains Biodiversity Project v. Pena*, No. 3:12–cv–02271–HZ,

17   2015 WL 1567444 at *1, 9 (D. Or. April 6, 2015) (ordering partial vacatur of agency decisions

18   by vacating Record of Decision and Final Environmental Impact Statement, but keeping existing

19   timber contracts in place). NWEA does not seek an order requiring Washington to give back the

20   money it has already spent; nor does NWEA seek an order requiring Washington to back out of

21   contractual obligations related to money it has already received. *See* Dkts. #106–107. Rather, as

22   a result of partially vacating the decisions at issue, Washington should be prohibited from using

23   any unobligated funds. With respect to the CWA Section 319 funds, this would mean stopping

24   the allocation of the remaining $290,998.67 referenced by Washington. *See* Dkt. #107 at ¶ 12.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

29

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

With respect to the CZMA funds, it is unclear from Washington's declaration whether there are any unspent or unallocated funds remaining. *See* Dkt. #106. But this Court can simply order that the same category of CZMA funding should not be spent or obligated because it is based on decisions that are unlawful.

Because NWEA is not seeking to make Washington re-pay money it has already spent or obligated, most of the arguments Defendants and Amici make regarding disruptive consequences are irrelevant. Whatever disruptive consequences flow from vacatur, however, do not warrant leaving the unlawful decisions in place. As one court explained, "[w]henever an agency is told it cannot do what it was planning to do, it will be inconvenienced and its efforts will be delayed." *League of Wilderness Defenders,* 2015 WL 1567444 at *5 (rejecting federal agency's argument that disruptive consequences justify remand without vacatur) (internal quotations omitted). In other words, of course there will be some disruption in what Washington has planned to do with the remaining funding, but this does not outweigh the seriousness of the violations at issue here.

Defendants and Amici also attempt to paint the picture that vacatur will result in environmental harm because Washington's nonpoint pollution program is presently working well. *See, e.g.*, Dkt. #108 at 24; Dkt. #105 at 6–9; Dkt. #104 at 5, 9–12. But the record in this case belies that conclusion. *See* Dkt. #93-1 at 4–8 (detailing the ways in which Washington's nonpoint program is deficient, water quality is poor, and aquatic species are impacted by nonpoint source pollution). Further, both Washington and Defendants suggest that vacatur would harm tribal interests. *See* Dkt. #108 at 24; Dkt. #105 at 7–10. The record shows, however, that tribal concerns about Washington's nonpoint pollution program have gone unaddressed for years. For example, in July 2016, the Northwest Indian Fisheries Commission sent a detailed letter to NOAA and EPA about their concerns with Washington's program and the agencies' failure to comply with CZARA. CZ0013565–CZ0013569. In that letter, the Commission makes

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

30

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

a series of recommendations to the federal agencies, including a recommendation that the agencies follow CZARA's withholding procedures. CZ0013568. Thus, at least the twenty tribes represented by the Northwest Indian Fisheries Commission are fully aware of the consequences of Washington's failure to have an approvable program. *See* https://nwifc.org/ (last visited May 24, 2018).

Finally, Amici are wrong when they suggest that vacating the 2011–2017 grants is somehow improper because NWEA did not include this specific relief in the prayer for relief section of its complaint. *See* Dkt. #104 at 12, n.3. Under Rule 54(c), this Court is clearly empowered to grant all of the relief to which NWEA is entitled, irrespective of what appears in the complaint. *See* Fed. R. Civ. P. 54(c); *see also Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1319 (9th Cir. 1982) (tort damages appropriate where arising from breach of implied covenant claim even though such relief was not demanded in pleading). Further, Amici (as well as the parties, none of which challenges this point) were sufficiently on notice of this potential for relief, as NWEA's complaint expressly alleged that the grants were unlawful under the APA, which directs the relief NWEA seeks. Dkt. #74, ¶¶ 87, 92; 5 U.S.C. § 706(2); *see also Cancellier*, 672 F.2d at 1319 (where complaint alleged claim that would lead to tort damages, defendant had sufficient notice, despite such damages not being demanded in prayer for relief).

Contrary to NOAA's and EPA's suggestion that NWEA has the "intention to disrupt Washington's implementation of its CNMP [sic]," Dkt. #108 at 25, NWEA's intention is to improve nonpoint source controls in the State of Washington using the "carrot and stick" mechanism Congress established in CZARA. Accordingly, NWEA seeks an order declaring unlawful and partially vacating NOAA's and EPA's grants to Washington from 2011 to 2017.

### III.       CONCLUSION.

For the foregoing reasons, NWEA requests summary judgment on claims two and three.

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

31

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4

1    Respectfully submitted this 25th day of May 2018.

2    s/Paul A. Kampmeier_____          s/Allison LaPlante_____
     Paul A. Kampmeier (WSBA #31560)        Allison LaPlante (OSB #023614)
3    Kampmeier & Knutsen PLLC               *Admitted pro hac vice*
4    615 Second Avenue, Suite 360           Earthrise Law Center
     Seattle, Washington 98104             Lewis & Clark Law School
5    Tel: (206) 223-4088 x 4                10015 S.W. Terwilliger Blvd.
     paul@kampmeierknutsen.com             Portland, OR 97219
6                                           Tel: (503) 768-6894
7                                           laplante@lclark.edu

8           *Attorneys for Plaintiff Northwest Environmental Advocates*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC                    32                    Kampmeier & Knutsen PLLC
                                                                   615 Second Avenue, Suite 360
                                                                    Seattle, Washington 98104
                                                                       (206) 223-4088 x 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS TWO AND THREE and this CERTIFICATE OF SERVICE with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record in this case.

s/Paul Kampmeier
Paul Kampmeier
WSBA #31560

PLAINTIFF'S REPLY BRIEF
ON CLAIMS TWO AND THREE
Case No. 2:16-cv-01866-JCC

33

Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 x 4