The Honorable John C. Coughenour

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATLE**

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, | |
| Plaintiff, | No. 2:16-cv-01866-JCC |
| v. | FEDERAL DEFENDANTS' REPLY IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS TWO AND THREE |
| THE U.S. DEPARTMENT OF COMMERCE, et al., | |
| Defendants, | Noted: June 8, 2018 |
| and | |
| THE STATE OF WASHINGTON, | |
| Defendant-Intervenor. | |

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.
2:16-cv-01866

U.S. Dep't of Justice
P.O. Box 7611
Washington, DC 2000-44
(202) 305-0245

**TABLE OF CONTENTS**

I.  **ARGUMENT**

    A.  Plaintiff does not seek to vindicate a procedural requirement, and therefore cannot show standing under the procedural injury test ............................................................ 1

    B.  Plaintiff fails to demonstrate causation and redressability ............................................ 4

    C.  Plaintiff's claims are barred by the statute of limitations ............................................. 5

    D.  Plaintiff fails to demonstrate that the Agencies have unlawfully withheld action or that they have unreasonably delayed in taking action because the Agencies have never found that Washington failed to submit an approvable program ..................... 8

    E.  Equitable relief would be permissible and appropriate because vacatur would not protect Plaintiff's interests or the environment ........................................................ 11

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.  
2:16-cv-01866

U.S. Dep't of Justice  
P.O. Box 7611  
Washington, DC 2000-44  
(202) 305-0245

1

# TABLE OF AUTHORITIES

**Federal Cases**

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................................... 4

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) .................................. 11

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ................................................ 1

*Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961 (9th Cir. 2003) .................. 1

*Ctr. for Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143 (N.D. Cal. 2002) ............... 12

*Ctr. for Biological Diversity v. EPA*, 90 F. Supp. 3d 1177 (W.D. Wash. 2015) ...................... 2

*Ctr. for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113 (D.D.C. 2002), *vacated on other grounds*, Nos. 02–5163, 02–5180, 2003 WL 179848 (D.C. Cir. Jan. 23, 2003) (per curiam) ............................................................................................................................... 12

*Ctr. for Food Safety v. Hamburg*, 954 F.Supp.2d 965 (N.D. Cal. 2013) ............................... 12

*Ctr. for Food Safety v. Vilsack,* 636 F.3d 1166 (9th Cir. 2011) ................................................ 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ........................ 1

*Hall v. Reg'l Transp. Comm'n of S. Nev.*, 362 F. App'x 694 (9th Cir. 2010) .......................... 7

*Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923 (9th Cir. 2010) ................. 7, 8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................................... 1

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .................................................. 5

*Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1 (D.C. Cir. 2005) ............................... 5

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ...................................... 11

*Padres Hacia Una Vida Mejor v. Jackson*, No. 11-cv-1094, 2012 WL 1158753 (E.D. Cal. Apr. 6, 2012) ........................................................................................................................ 7

*Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008) ................ 1, 4

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .................................................................... 1, 4

*Vietnam Veterans of America v. Central Intelligence Agency*, 811 F.3d 1068 (9th Cir. 2015) ............................................................................................................................................ 11

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.    U.S. Dep't of Justice
2:16-cv-01866                                                 P.O. Box 7611
                                                              Washington, DC 2000-44
                                                               (202) 305-0245

2

*Wash. Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013) ............................................ 1, 2

*Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C. Cir. 2006) ..................................................... 7

**Federal Statutes**

16 U.S.C. § 1455b(c) .............................................................................................................. 2, 6, 9

28 U.S.C. § 2401(a) ........................................................................................................................ 8

5 U.S.C. § 702 ............................................................................................................................... 12

5 U.S.C. § 706 ................................................................................................................................. 7

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.       U.S. Dep't of Justice
2:16-cv-01866                                                    P.O. Box 7611
                                                                 Washington, DC 2000-44
                                                                 (202) 305-0245

3

# I. ARGUMENT

## A. Plaintiff does not seek to vindicate a procedural requirement, and therefore cannot show standing under the procedural injury test

The Agencies have shown that Plaintiff lacks standing for Claims 2 and 3 because it does not allege a procedural injury and fails to demonstrate causation and redressability.[1] A plaintiff alleging a procedural injury "must first show that the agency procedures in question were designed to protect a threatened concrete interest that is the 'ultimate basis' of [its] standing."[2] *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (citing *Lujan*, 504 U.S. at 573 n. 8). This requires a showing that (1) the agency violated certain procedural rules, (2) those rules protect the plaintiff's concrete interests, and (3) it is reasonably probable that the challenged action will threaten the plaintiff's concrete interests. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003). A plaintiff shows injury to a "concrete interest" when, for instance, the plaintiff "will suffer harm by virtue of [its] geographic proximity to and use of areas that will be affected" by the challenged agency action. *Id.* at 971. Only then, once plaintiff has shown that the agency has violated procedural rules designed to protect the plaintiffs concrete interest, can a plaintiff's burden to satisfy the last two prongs of the Article III inquiry, causation and redressability, be relaxed. *Lujan*, 504 U.S. at 572 n.7; *see also Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (explaining this "key difference" between standing for procedural and substantive violations); *see also Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1145 (9th Cir. 2013) (same).

---

[1] The Agencies do not contest Plaintiff's organizational standing for Claims 2 and 3 insofar as the interests at stake are germane to Plaintiff's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000). The Agencies do challenge, however, whether Plaintiff alleges a substantive injury or a procedural injury and whether it demonstrates causation and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

[2] Plaintiff attempts to create confusion over the standing analysis by claiming that Article III always requires "a concrete, substantive injury" and that it merely adopted the term "procedural injury" because it was the term used by the Ninth Circuit. Pl.'s Reply in Supp. of Mot. for Partial Summ. J. 4-5 ("Pl.'s Br."), ECF No. 109. Defendants agree that Plaintiff must always demonstrate an injury to a "concrete" interest. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

| Fed. Defs.' Reply in Support of Mot. for Partial Summ. J. | U.S. Dep't of Justice |
|---|---|
| 2:16-cv-01866 | P.O. Box 7611 |
| | Washington, DC 2000-44 |
| | (202) 305-0245 |

1    Here, Plaintiff cannot show the agency violated procedural rules at all – let alone
2 procedural rules designed to protect Plaintiff's interests – because it seeks to compel a
3 substantive outcome: the withholding of funds. Plaintiff's overall theory of standing is that
4 federal actions that directly and substantively affect third parties (like the State of
5 Washington), but that only indirectly affect a plaintiff's environmental interests, are
6 necessarily procedural, and, therefore, benefit from the relaxed analysis of causation and
7 redressability for procedural rights standing. Pl.'s Br. 6. But the Ninth Circuit has already
8 rejected this argument, holding that a challenge seeking to require the EPA to regulate oil
9 refineries in Washington — that is, to regulate third parties, not to directly affect plaintiff's
10 environmental interests — alleged a substantive injury, not a procedural one. *See Bellon*, 732
11 F.3d at 1145. Like here, the mere fact that Plaintiff does not seek to compel the agency to
12 directly improve environmental quality does not make its claim a procedural one. *See also
13 Ctr. for Biological Diversity v. EPA*, 90 F. Supp. 3d 1177, 1189 n.8 (W.D. Wash. 2015)
14 (plaintiff's challenge to EPA's approval of a state's Clean Water Act submission was a
15 substantive action, and applying the traditional test for standing).

16    In defense of its allegation of a procedural injury, Plaintiff, for the first time,
17 concedes that it is not seeking that the Court order its specific outcome – restored water
18 quality – but nonetheless seeks an order compelling the Agencies to follow the "procedures"
19 that it alleges CZARA mandates – the withholding of funds through NOAA's annual funding
20 guidance. Pl.'s Br. 6. That funding guidance, however, does not make "eligibility
21 determinations" on an annual basis, but merely allocates the pool of available CZMA funds
22 among the participating states pursuant to CZMA section 1455b(c) and the approval status of
23 each states' coastal nonpoint programs. 16 U.S.C. § 1455b(c); CZ001361-65.[3] Plaintiff's
24 assertion is contradicted by the statutory provisions it challenges, which, if section 1455b(c)

---

[3] In addition to the Secretary making a finding that the state failed to submit an approvable program, the statute requires public participation, and grant regulations affording the grantee opportunity to cure deficiencies and to respond to agency reasoning prior to termination or suspension of current or future grant eligibility. ECF No. 108 at 24.

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.    U.S. Dep't of Justice
2:16-cv-01866                                                 P.O. Box 7611
                                                              Washington, DC 2000-44
                                                              (202) 305-0245

2

contains any procedural requirement, directs the Agencies to withhold specific percentages of funds – after making the failure to submit determination. And the statute does not contain any withholding "procedures" that are related in any way to Plaintiff's interests – it merely requires redistribution of any withheld funds to the other states. 16 U.S.C. § 1455b(c). Plaintiff's assertions are contradicted by Plaintiff's Second Amended Complaint expressly, which seeks an order compelling the Agencies to withhold funds without referring to any of the "procedures" it now identifies. *See*, *e.g.*, Pl.'s Second Am. & Suppl. Compl. 33 (asking Court to order NOAA and EPA "to withhold the required portions of CZMA grant funds from Washington until EPA and NOAA find that Washington has submitted an approvable Coastal Nonpoint Program"), ECF No. 74.

Plaintiff's attempt to compare CZARA's withholding provisions to ESA Section 7 provisions for the purposes of standing fails for the same reasons. *Id.* ESA Section 7 imposes both substantive and procedural mandates, whereas the CZARA provisions upon which Plaintiff seeks relief impose only a substantive mandate. This difference is especially stark when comparing the scope and application of the two statutes. The ESA applies to federal agencies and is mandatory, both in its procedural and substantive mandates. Non-compliance with ESA's substantive mandates may include civil penalties, criminal penalties, or both. By contrast, CZARA creates a state-federal partnership that is voluntary. Noncompliance with the nonpoint source programs administered under state law with partial federal funding does not create federal liability. There is no federal backstop at all – a state may "opt out" of administration of CZMA/CWA coastal nonpoint source program under CZARA and there would be no federally-administered program to address nonpoint source pollution. The interests protected under CZARA's grant withholding provisions are not those of groups like Plaintiff, Pl.'s Br. 8, but those of other States that have similarly volunteered to administer nonpoint programs. 16 U.S.C. §1455b(c)(3) & (c)(4) (final sentences).

By comparing its claims to the procedural requirements of ESA Section 7, Plaintiff's analogy is fundamentally wrong. Plaintiff's CZARA claims do not ask the Agencies to

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.  
2:16-cv-01866

U.S. Dep't of Justice  
P.O. Box 7611  
Washington, DC 2000-44  
(202) 305-0245

3

1  follow procedures to consult with another agency, to prepare an assessment, or to identify
2  alternatives. Plaintiff asks that the Agencies withhold money from a state; that is a
3  substantive outcome, not a procedure. Plaintiff's reliance on *Bennett v. Spear*, 520 U.S. 154
4  (1997), is even more misguided. Pl.'s Br. 8. Plaintiff relies on *Bennett* to argue that ESA
5  Section 7's procedural requirements "result in substantive impacts from which 'legal
6  consequences will flow' and which 'alter the legal regime to which the action agency is
7  subject,'" and in turn, that the withholding of funds here, although resulting in immediate
8  substantive impacts, is nonetheless a mere procedural requirement. *Id.* (quoting Bennett, 520
9  U.S. at 178). But the citation in *Bennett* upon which Plaintiff relies discusses APA finality,
10 not Article III standing. More importantly, as discussed above, the ESA imposes both
11 substantive and procedural mandates, and courts apply either the traditional test or the
12 relaxed procedural rights test as appropriate. *Salmon Spawning*, 545 F.3d at 1228. The Court
13 in *Bennett* applied the traditional standing test, which the Agencies assert *is* the proper test
14 for the Court to apply in this case. *See Bennett*, 520 U.S. at 167-71. Under the traditional
15 standing test, as discussed below (or even under the "relaxed" test), Plaintiff fails to
16 demonstrate standing and cannot demonstrate causation and redressability. Defendants note
17 that Plaintiff does not attempt to defend its standing under the traditional test for standing.
18 *See* Pl.'s Br. 10.

19         **B.**    **Plaintiff fails to demonstrate causation and redressability**

20       Plaintiff must show that the agency's failure to withhold caused plaintiff's injuries
21 and that a favorable outcome in this case would "likely" redress those injuries. *Spokeo*, 136
22 S. Ct. at 1547. Plaintiff cannot do so. Most notably, Plaintiff fails to show how less funding
23 for Washington's program – which is designed in part to protect water quality – could protect
24 Plaintiff's alleged interests in water quality, especially in light of the fact that Washington
25 has submitted evidence discussing the likely harmful environmental impacts if funding is
26 decreased. *See* Decl. of Ben Rau ¶¶ 12-13, ECF No. 107; Decl. of Brian Lynn ¶¶ 5-7, ECF
27 No. 106. The record demonstrates that Plaintiff's requested relief simply would not redress
28

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.        U.S. Dep't of Justice
2:16-cv-01866        P.O. Box 7611
        Washington, DC 2000-44
        (202) 305-0245

1  Plaintiff's asserted harm nor accomplish Plaintiff's goal of increased environmental
2  protection. Plaintiff does not argue it can meet the traditional requirements for causation and
3  redressability. *See* Pl.'s Br. 10 (arguing that the traditional inquiry is "irrelevant" and
4  declining to argue that Plaintiff has standing under the traditional inquiry).
5       Even under the relaxed test for standing, Plaintiff has failed to show causation and
6  redressability for the same reasons: (1) the record fails to show that there is a causal
7  connection between Plaintiff's alleged injury – adverse water quality and imperiled species –
8  and the Agencies' conduct or (2) that the diminished funding for the State's nonpoint source
9  control program "could protect" the Plaintiff's environmental interests.[4] There is no dispute
10 that there is no remedy the Court could order that would redress Plaintiff's alleged harm.
11 Plaintiff's requested relief would deprive Washington of federal funds to implement its
12 Program to improve water quality and the health of aquatic species by reducing nonpoint
13 source pollution. This is exactly the opposite of what Plaintiff seeks, which is that
14 Washington do more to address nonpoint source pollution, not less, and reduced funding will
15 not remedy Plaintiff's harm. Thus, Plaintiff cannot demonstrate that its claims are redressable
16 even under a relaxed standard.

17     **C.**    **Plaintiff's claims are barred by the statute of limitations**

18      Plaintiff argues that it does not challenge the Agencies' conditional approval policy
19 because the policy, Pl.'s Br. 13, or the 1998 approval findings, *id.* at 2, 9. Since the filing of

20 ---

21 [4] The Agencies also note that while the relaxation of causation and redressability for procedural rights claims allows the Court to presume that an alleged procedural misstep by the Agencies is sufficiently linked with their
22 substantive actions, it does not allow the Court to presume a sufficient nexus between the Agencies' actions and subsequent steps in the causal chain, such as the actions of a third party (like the State of Washington). Indeed,
23 the D.C. Circuit has explicitly held to the contrary in procedural rights cases. *See Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005) ("The relaxation of procedural standing requirements would
24 excuse [plaintiff] from having to prove the causal relationship regarding the [Federal defendant's] action, but its burden regarding the action of the [State] authorities would not change . . . . This Court assumes the causal
25 relationship between the procedural defect and the final agency action. Nonetheless, plaintiffs still must demonstrate a causal relationship between the final action and the alleged injuries.") (internal quotation marks,
26 citations and alterations omitted); *see also Ctr. for Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011) (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-55 (2010) (in a NEPA procedural rights case,
27 assuming the nexus between defendant's compliance with NEPA and the underlying substantive action, but applying traditional analysis case to assess whether the defendant's underlying substantive action caused injury
28 to plaintiff's environmental interests)).

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.          U.S. Dep't of Justice
2:16-cv-01866          P.O. Box 7611
          Washington, DC 2000-44
          (202) 305-0245

its first Complaint, however, Plaintiff has directly challenged the 1998 approval and the Agencies' conditional approval policy. ECF No. 1 at ¶ 28 ("EPA and NOAA have indefinitely delayed withholding CWA and CZMA grant funds from Washington and other states . . . EPA and NOAA accomplished that delay through their conditional approval policy."), ¶¶ 29-32. Challenges to the 1998 approval and the validity of the Agencies' polices are time barred, as are any attempts by Plaintiff now to recharacterize the 1998 approval findings as a specific finding that Washington failed to submit an approvable program. Pl.'s Br. 2, 9. Furthermore, by arguing that the conditional approval policy does not authorize the Agencies' subsequent grant funding, Pl.'s Br. 13, Plaintiff is necessarily challenging that policy, or the Agencies' compliance with that policy, both of which are also time barred.

In contemporaneous CZARA implementation documents, the Agencies made a series of statutory interpretations[5] for implementation through the issuance of agency guidance. Under the Agencies' Program Development and Approval Guidance issued in 1995 ("Guidance"), the Agencies identify three distinct decision points: full approval, conditional approval, and a finding of a failure to submit an approvable program. CZ0001968, CZ0002011. The Guidance states "[i]f NOAA and EPA finds that a state fails to submit an approvable program or fails to meet the conditions for full approval, both section 319 and section 306 funds will be withheld." *Id.* Conditional approval is considered a program "approval" under section 1455b, as further evidenced by the Agencies' rationale that conditionally approved programs must be implemented under section 1455b(c)(2). CZ0002011 ("Federal approval" means the first Federal approval action, whether full or conditional. For states receiving conditional approval, the implementation schedule begins to run at the time that conditional, rather than full, approval is granted."); § 1455b(c)(2) ("If the program of a State is approved in accordance with paragraph (1), the State shall implement the program . . . .").

---

[5] Indeed, Plaintiff cites to an even earlier (1995) document of the Agencies that interpreted CZARA to enable full funding undiminished by CZARA "during the period of the conditional approval." Pl. Br. 3.

| Fed. Defs.' Reply in Support of Mot. for Partial Summ. J. | U.S. Dep't of Justice |
| 2:16-cv-01866 | P.O. Box 7611 |
| | Washington, DC 2000-44 |
| | (202) 305-0245 |

1    The Agencies applied their Guidance to Washington's Program. The Agencies' 1998
2    Findings as to Washington's Program expressly states "NOAA and EPA approve the coastal
3    nonpoint pollution program submitted by the State of Washington . . . subject to certain
4    conditions. This document provides the specific findings used by EPA and NOAA as *the
5    basis for the decision to approve the State's program*. It also provides the rationale for the
6    findings and includes the conditions that will need to be met for Washington to receive final
7    approval of its program." CZ0005978 (emphasis added). By its terms, the 1998 Findings
8    offer no support to Plaintiff's argument that the Agencies somehow affirmatively found that
9    Washington failed to submit an approvable program.

10   Plaintiff disputes the Agencies' policy by arguing that its challenge is timely because
11   its challenge is permissible under the discrete violations theory. Pl.'s Br. 13-14. It is not.
12   Under the theory of discrete violations, repeated discrete acts by an agency are treated as a
13   series of independent and individual causes of action for which the actions *falling within the
14   statute of limitations* are timely. *See id.* at 113-14 (citing, *inter alia*, *Padres Hacia Una Vida
15   Mejor v. Jackson*, No. 11-cv-1094, 2012 WL 1158753, at *7 (E.D. Cal. Apr. 6, 2012). The
16   theory of discrete violations provides that "[w]here there is an on-going, binding duty to
17   perform an act, each day that the agency does not perform that act is a single, discrete
18   violation." *Padres Hacia*, 2012 WL 1158753, at *7 (citation omitted). As the court in *Padres
19   Hacia* notes, however, there is no clear Ninth Circuit precedent adopting the theory of
20   discrete violations and, indeed, the Ninth Circuit has rejected the application of the
21   continuing violations doctrine, a similar theory, in APA cases. *Id.* at *9 (citing *Hall v. Reg'l
22   Transp. Comm'n of S. Nev.*, 362 F. App'x 694, 695 (9th Cir. 2010)). Rather, Plaintiff's
23   assertion that the discrete violations theory would apply in the Ninth Circuit is based on the
24   *Padres Hacia* court's interpretation of a Ninth Circuit decision, *Hells Canyon Pres. Council
25   v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010), which in turn offered a brief cite to a
26   D.C. Circuit decision discussing when 5 U.S.C. § 706 relief may be available. *Id.* In the D.C.
27   Circuit case, *Wilderness Soc'y v. Norton*, the D.C. Circuit, noting that the plaintiff alleged
28

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.        U.S. Dep't of Justice
2:16-cv-01866                                                     P.O. Box 7611
                                                                  Washington, DC 2000-44
                                                                   (202) 305-0245

7

1  continuing violations by the government, held that section 706 relief was available,

2  notwithstanding 28 U.S.C. § 2401(a), where an agency ignored a statutory deadline. 434 F.3d

3  584, 588-89 (D.C. Cir. 2006). Here, setting aside the Ninth Circuit's prohibition on the

4  application of the continuing violations doctrine, as the Court has already found, CZARA

5  imposes no deadline to approve or disapprove.

6        Furthermore, the Ninth Circuit's decision in *Hells Canyon* is fatal to Plaintiff's

7  assertion that the theory of discrete violations applies to its challenge. In *Hells Canyon*, the

8  Ninth Circuit found that because the plaintiffs had not identified a discrete agency action that

9  the Forest Service was required to take, they failed to state a claim under section 706(1). 593

10 F.3d at 933. Likewise, Plaintiff here fails to identify a discrete agency action that the

11 Agencies were required to take. As the Agencies have briefed, CZARA imposed no such

12 duty to withhold a percentage of grant funds without a finding that the state has failed to

13 submit an approvable program. *See* Fed. Defs.' Cross-Mot. for Partial Summ. J. 18-19, ECF

14 No. 108 ("Agency Br."). What Plaintiff seeks to compel in this case is based on Plaintiff's

15 direct attack on the Agency's administration of CZARA. CZARA, as the Court found, does

16 not mandate that the Agencies affirmatively disapprove a program not meeting the applicable

17 criteria, and the Agencies never have found that Washington failed to submit an approvable

18 program. Plaintiff's challenge to the Agencies' conditional approval policy is therefore

19 barred by the applicable statute of limitations.

20     **D.**    **Plaintiff fails to demonstrate that the Agencies have unlawfully withheld action or that they have unreasonably delayed in taking action because the Agencies have never found that Washington failed to submit an approvable program**

21

22

23       Plaintiff also argues that because the Agencies specifically found in the 1998

24 Findings that Washington did not submit an approvable program, the Agencies have

25 unlawfully withheld the withholding of a percentage of grant funds to the State. Pl.'s Br. 18.

26 Plaintiff's argument, however, is faulty in that Plaintiff cannot compel compliance with

27 statutory provisions that do not apply. As the Court found in dismissing Plaintiff's Claim 1,

28 CZARA imposes no requirement on the Agencies to disapprove a program and "no legal

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.          U.S. Dep't of Justice
2:16-cv-01866          P.O. Box 7611
        Washington, DC 2000-44
        (202) 305-0245

1 basis exists for [the Court] to order the agencies to definitively act on Washington's []
2 Program where they are not required by statute to do so." ECF No. 39 at 10. Because
3 Plaintiff cannot assert that the Agencies are required to disapprove Washington's Program,
4 Plaintiff attempts to manufacture a claim that the Agencies already did find that Washington
5 failed to submit an approvable program. Pl.'s Br. 19. But as discussed above, the Agencies
6 made no such finding. Plaintiff, therefore, cannot compel the Agencies' to withhold funds
7 under CZARA provisions that apply only if the Agencies make a finding that Washington
8 failed to submit an approvable program.[6]

9 Nor can Plaintiff demonstrate that the Agencies have unreasonably delayed on
10 making a decision on Washington's program. Plaintiff argues that the Agencies had a
11 mandatory duty to withhold grant funds that has been unlawfully withheld or unreasonably
12 delayed. *Id.* at 22. Plaintiff's argument, however, ignores the fact that CZARA requires the
13 Agencies to withhold a percentage of grant funds only where the Agencies have first found
14 that a state failed to submit an approvable program. *See* 16 U.S.C. § 1455b(c)(3) and (4).
15 Because the Agencies have issued no such finding for Washington, there can be no
16 mandatory discrete agency action to withhold funds. Even if the Court finds that there is a
17 discrete action that is required, as the Agencies discussed in their response brief, the
18 Agencies' actions have been reasonable and in accordance with their guidelines.  *See* Agency
19 Br. 21. Plaintiff's arguments to the contrary are premised on a flawed reading of CZARA.
20 Plaintiff argues that the Agencies have unreasonably delayed because the projects
21 Washington funds that "fix the problems" do not meet CZARA's goals of eliminating
22 nonpoint source pollution. Pl.'s Br. 23. Congress did not seek to "eliminate" nonpoint source

---

[6] Plaintiff, in responding to the State of Washington's brief, asserts that the issue before the Court is "whether the 1998 Findings obligate NOAA and EPA to withhold funds from Washington . . . ." Pl.'s Br. 21. This is an incorrect statement and inconsistent with Plaintiff's representation that "there is no reason to challenge the conditional approval policy or Washington's conditional approval because neither justifies Defendants' failure to withhold funds after 2002." *Id.* at 13. The issue before the Court is Plaintiff's challenge that the Agencies have not properly implemented CZARA. This is an important distinction because it is CZARA that forms the basis of Plaintiff's claims and under which it seeks to have this Court assert its jurisdiction. The 1998 Findings provide Plaintiff no avenue under which to seek judicial relief.

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.                    U.S. Dep't of Justice
2:16-cv-01866                                                                P.O. Box 7611
                                                                             Washington, DC 2000-44
                                                                              (202) 305-0245

9

1  pollution with CZARA; it is to "restore and protect" coastal waters. 16 U.S.C. § 1455b(a)(1).
2  The term "eliminate" does not appear in CZARA. The protection and restoration projects
3  funded through Washington's Program are exactly the types of projects CZARA encourages
4  to reduce nonpoint source pollution. Diminishing the funding, therefore, subverts CZARA's
5  purpose.

6        Plaintiff also takes umbrage over that fact the Agencies did not specifically address
7  every *TRAC* factor in discussing whether there has been any unreasonable delay in
8  determining whether to withhold grant funds or every case cited. Pl.'s Br. 23.  First, ignoring
9  the Agencies' statement that "[a] majority of the *TRAC* factors indicate that the Agencies
10  have not unreasonably delayed determining . . . whether to withhold grant funds," Agency
11  Br. 21, Plaintiff argues that *TRAC* factors three (human health and welfare at stake), four
12  (ordering withholding will not undermine other agency activities), and five (prejudice to
13  Plaintiff's interests in clean water and healthy aquatic species) support its assertion. Pl.'s Br.
14  23. Two of these *TRAC* factors actually support the Agencies' position. The Agencies'
15  approach of providing Washington undiminished grant funds in order to develop its program
16  and implement projects to curb nonpoint source pollution has protected human health and
17  welfare. Likewise, the Agencies' conditional approval of Washington's program has not
18  prejudiced Plaintiff's interests in clean water and healthy aquatic species. To the contrary, the
19  Agencies' conditional approval of Washington's program promotes Plaintiff's interests by
20  allowing the State the opportunity to improve, update, and expand its programs and projects
21  to curb nonpoint source pollution. ECF No. 105 at 3, 8. Washington has been able to
22  continue to develop and implement its Program, and has been able to work with local
23  governments, Tribes, and other third parties to reduce nonpoint source pollution in the State.
24  *Id.* While the fourth factor (the effect of expedited delayed action on agency activities of a
25  higher or competing priority) cited by Plaintiff does not support either side's argument, it is

26
27
28

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.      U.S. Dep't of Justice
2:16-cv-01866      P.O. Box 7611
    Washington, DC 2000-44
     (202) 305-0245

clear that a majority of the *TRAC* factors do not support Plaintiff's assertion of unreasonable delay.[7]

### E. Equitable relief would be permissible and appropriate because vacatur would not protect Plaintiff's interests or the environment

If the Court finds for Plaintiff here, equitable relief would be both permissible and favorable to Plaintiff. Plaintiff's sweeping requests to vacate past grants and impose restrictions on future grants before the Agencies have determined that Washington has not submitted an approvable program would be in direct conflict with CZARA's goals, which seek to restore and protect the coastal waters. Instead, if finding for Plaintiff, the Court should remand the action to the Agencies to follow procedures under CZARA.

In asserting that the Court should not consider the equitable relief of remand without vacatur, Plaintiff misstates both the effect of the Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55 (2004), and the body of Ninth Circuit precedent on the issue. Pl.'s Br. 30. In *SUWA*, the Supreme Court did not so bind the remedial options available to courts considering APA cases, "[t]hus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." 542 U.S. at 65. And in *Vietnam Veterans of America v. Central Intelligence Agency*, 811 F.3d 1068 (9th Cir. 2015), Pl.'s Br. 25, the Ninth Circuit applied *SUWA*'s approach to the substantive question of whether there was a discrete agency action mandated by law, but did not reach the issue of whether equitable remedies remained available to the court. *Vietnam Veterans of Am.*, 811 F.3d at 078-79; *see also Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that "a statutory violation does not always lead to the automatic issuance of an injunction, and finding instead that the test for determining if equitable relief is appropriate is whether an injunction is

---

[7] Plaintiff previously cited to six cases that discuss unreasonable delay. None of these cases support Plaintiff's assertion that unreasonable delay should be found in this case. Rather, the inquiries into unreasonable delay for those cases were fact specific and did not assert a generalized proposition that unreasonable delay can be found simply because there has been a passage of time.

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.　　　　　　　　　　U.S. Dep't of Justice
2:16-cv-01866　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 7611
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 2000-44
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　 (202) 305-0245

necessary to effectuate the congressional purpose behind the statute."); *Ctr. for Food Safety v. Hamburg*, 954 F. Supp. 2d 965, 971 (N.D. Cal. 2013); *Ctr. for Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143, 1159-60, 1164 (N.D. Cal. 2002). *Badgley* is consistent with the plain language of the APA itself, which states that "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . ." 5 U.S.C. § 702; *Ctr. for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113, 118 (D.D.C. 2002), *vacated on other grounds*, Nos. 02–5163, 02–5180, 2003 WL 179848 (D.C. Cir. Jan. 23, 2003) (per curiam).

As the Agencies have discussed, and as briefed by Amici Curiae and Washington in their responses to Plaintiff's pleading (*see* ECF Nos. 104 and 105), the consequences of vacatur would be disruptive to Washington's Program, the State and local jurisdictions, as well as Tribes that interact and rely upon the Program, and ongoing mitigation efforts to reduce nonpoint source pollution. For the first time, Plaintiff clarifies its relief request regarding previously awarded grant funds, arguing that it seeks to prohibit Washington from using any "unobligated" funds. Pl.'s Br. 29. It is unclear how this request would operate and the Agencies request that, to the extent the Court holds that a portion of the previously-issued grant funds must be withheld under CZARA, the Court should afford the Defendant parties an opportunity to determine whether there are any unobligated funds. Further, to the extent that the Court determines that the Agencies must withhold a portion of grant funds already awarded by the Agencies to the State (but not yet awarded by the State to third parties for projects) or not yet awarded by the Agencies to the State, any direction to the Agencies should be consistent with the bare text of CZARA such that the Agencies retain discretion to determine how to withhold any such amounts.[8]

---

[8] The Agencies request additional briefing on any finding of liability as, at this juncture, they do not know the basis for any determination against the Agencies.

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.        U.S. Dep't of Justice
2:16-cv-01866                                                     P.O. Box 7611
                                                                  Washington, DC 2000-44
                                                                   (202) 305-0245

12

Respectfully submitted this 8th day of June, 2018,

        JEFFREY H. WOOD
        Acting Assistant Attorney General
        Environment & Natural Resources Division
        United States Department of Justice

        */s/ Jody H. Schwarz*
        JODY H. SCHWARZ, Trial Attorney
        Natural Resources Section
        P.O. Box 7611, Ben Franklin Station
        Washington, DC 20044-7611
        (202) 305-0245 (phone)
        jody.schwarz@usdoj.gov

        ANNETTE L. HAYES
        United States Attorney

        */s/ Brian Kipnis*
        BRIAN KIPNIS
        Assistant United States Attorney
        for the Western District of Washington
        5220 United States Courthouse
        700 Stewart Street, Suite 5220
        Seattle, WA 98101
        206-553-7970
        brian.kipnis@usdoj.gov

        *Attorneys for Federal Defendants*

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.    U.S. Dep't of Justice
2:16-cv-01866    P.O. Box 7611
    Washington, DC 2000-44
    (202) 305-0245

13

## CERTIFICATE OF SERVICE

I certify that on June 8, 2018, the foregoing will be electronically filed with the Court's electronic filing system, which will generate automatic service upon on all Parties enrolled to receive such notice.

*/s/ Jody H. Schwarz*
JODY H. SCHWARZ, Trial Attorney
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 305-0245 (phone)
jody.schwarz@usdoj.gov

*Trial Attorney for Defendants*

Fed. Defs.' Reply in Support of Mot. for Partial Summ. J.   U.S. Dep't of Justice
2:16-cv-01866                                                P.O. Box 7611
                                                             Washington, DC 2000-44
                                                              (202) 305-0245

14